[Civ. No. 8554.   Second Appellate District, Division Two.—September 6, 1934.]

M. L. RABBITT, Trustee, etc., Appellant, v. UNION INDEMNITY COMPANY (a Corporation) et al., Respondents.

Elmer P. Bromley and H. E. Lindersmith for Appellant.

Kidd, Schell & Delamer for Respondents.

WILLIS, J., *pro tem.*—Appellant, plaintiff below, as trustee in bankruptcy of Citizens Construction Company, a corporation, brought this action against respondent Union Indemnity Company and several fictitious defendants, for recovery of possession of six Improvement Act bonds of the stipulated value of $12,076.42, plus interest at seven per cent from date of bond, or their value in case possession could not be had. The cause was tried and submitted on written stipulations of facts by plaintiff and the defendant indemnity company, by which all the allegations of the complaint are established as true except the right of plaintiff to possession.

Although the record discloses that formal findings of fact were directed by the court, and the judgment recites that findings were filed, none appear in the record on appeal. Under the well-settled rule in this state, the mere nonappearance of findings or a waiver thereof in the record does not constitute error, but the presumption of waiver will be indulged in unless a contrary showing is made; and when parties stipulate in writing to all the facts, and cause such stipulation to be made part of the record on appeal, the facts so recited take the place of findings. (*Robinson* v. *El Centro Grain Co.*, 133 Cal. App. 567, 572 [24 Pac. (2d)

554].) Herein, therefore, we must look to the stipulations of facts for the facts of the case.

The Citizens Construction Company on January 23, 1928, was a corporation in which M. B. Kugler, G. Roy Smith and Frank M. Smith were the only stockholders and constituted the entire board of directors thereof, Kugler being president, G. Roy Smith, vice-president, and Frank M. Smith, secretary. At that time the company was the owner of three contracts between itself and the board of public works of the city of Los Angeles for the improvement of certain public highways. In connection with said public improvement jobs and the financing thereof, an application was made to respondent Union Indemnity Company for certain surety bonds, one to secure payment for labor and materials in the sum of $45,500 and one for "faithful performance" in the sum of $22,750. The first above mentioned application was dated January 23, 1928, reciting therein that the name of the applicant was M. B. Kugler, and was signed by "M. B. Kugler, applicant", "Citizens Construction Co., by M. B. Kugler, pres.," and by G. Roy Smith, without further designation or description. The second application was dated the same day and recited that applicant's name was M. B. Kugler, being signed by "M. B. Kugler, applicant", "Citizens Construction Co., by M. B. Kugler, Pres.," and by G. Roy Smith, also without further description. At the time of presenting said applications a general indemnity agreement was executed between the Union Indemnity Company and the following signers, viz., "M. B. Kugler", "G. Roy Smith", "Citizens Construction Co., by M. B. Kugler, Pres., by G. Roy Smith, V. Pres. by Frank M. Smith".

Pursuant to the two applications above described, respondent issued the two surety bonds therein described, and on April 2, 1928, issued on behalf of Citizens Construction Company its bond in the sum of $69,300 in favor of Elliott-Horne Company, guaranteeing the latter company against loss in connection with the public improvement bond in event it advanced the sum of $63,000 to the construction company on said public improvement jobs. Application for this bond was signed by "Citizens Construction Co., by Frank M. Smith, Sec'y." The sum of $63,000 was thereafter advanced by Elliott-Horne Company to the construction company under a loan agreement, the latter assigning

its public improvement contract in question to Elliott-Horne Company, such assignment being signed "Citizens Construction Co., By G. Roy Smith, Vice President, By Frank M. Smith, Sec. & Treasurer". This assignment contained authority to the board of public works of the city of Los Angeles to deliver to Elliott-Horne Company the Improvement Act bonds which were the proceeds of the public improvement contract above mentioned. In accordance with such authority the bonds which are the subject of this action were delivered to Elliott-Horne Company, which company in turn delivered them to respondent Union Indemnity Company, which now holds said bonds and claims to hold them as collateral security only for certain surety bonds issued by it to G. Roy Smith, and not as security for any obligations under the labor and material or faithful performance or Elliott-Horne surety bonds, except for repayment of costs and attorney fees incurred in connection with the investigation of claims so filed with it; and as to these it is stipulated by the parties in the written stipulation of facts that in event the court should adjudge that appellant was entitled to possession of the bonds, were it not for the said costs and attorney fees claim, the court might decree possession of said bonds less an amount to be fixed by it to compensate the indemnity company for said costs and attorney fees, amounting to the stipulated sum of $400.

Subsequent to the execution of the general indemnity bond above described and more fully stated hereinafter, respondent issued on behalf of and at the instance of G. Roy Smith, in his individual capacity and not as an officer of the Citizens Construction Company, certain surety bonds, viz.: (1) Bond for release of attachment in the sum of $648.60 in favor of one W. S. Johnson; (2) contract surety bond in the sum of $10,000, in favor of Board of Public Works of the City of Los Angeles, to secure payment by said G. Roy Smith of material and labor claims on a public improvement job; (3) contract surety bond in the sum of $5,400, in favor of said board for faithful performance of said contract upon said job by said G. Roy Smith; (4) a finance indemnity bond in the sum of $15,926, in favor of Municipal Bond Company, securing advancement of moneys by that company to G. Roy Smith in connection with the above-mentioned improvement job. The Citizens Construction Company was not a party in the action in which such

release of attachment bond was issued, and has no interest in any of the public improvement jobs for which the above-described surety bonds were issued to G. Roy Smith.

Thereafter, respondent paid to various persons sums of money aggregating $12,873.32, and incurred attorney's fees and expenses in the sum of $1400, by reason of the default of G. Roy Smith in connection with the above-mentioned transactions and by reason of the issuance of said surety bonds to him personally. For repayment of this sum respondent claims the right to hold the Improvement Act bonds which are the subject of this action as collateral security under the surety bonds issued to G. Roy Smith in his individual capacity, contending that under the terms of the general indemnity agreement the Citizens Construction Company became indemnitor for any surety bonds issued by respondent to G. Roy Smith in his individual capacity, and that the collateral pledged by said company with respondent as security for surety bonds issued to it could be held as security for surety bonds issued to G. Roy Smith, as an individual indemnitor. The determination of this contention constituted the sole issue in the lower court and it therein was decided in favor of respondent here, and on this appeal it is the only problem presented by the record and the briefs of the parties for solution. That solution must be found in an analysis and, if necessary, a construction of the general indemnity agreement and on a determination of its questioned validity.

In its essential and relevant parts applicable to the issue before us, the general indemnity agreement, signed by M. B. Kugler, G. Roy Smith and Citizens Construction Company, provides among other things: "Whereas, the undersigned, hereinafter referred to as indemnitors, have requested and do hereby request the Union Indemnity Company . . . to execute or procure the execution of certain bonds . . . hereafter referred to as 'such bond or bonds', as have been, and such as may hereafter be, applied for, either directly or through any agent, attorney or other representative, by the indemnitors or any one or more of them, or by any other person, firm or corporation whose name appears on any schedule or list of approved subsidiaries, signed by any of the indemnitors and attached or to be attached hereto; and the Company, upon the express condition that this instrument be executed, and in consideration thereof, has executed

or procured the execution of, and may from time to time hereafter execute or procure the execution of such bond or bonds. . . . And whereas, the indemnitors have a substantial, material and beneficial interest in the obtaining of such bond or bonds. Now, therefore, in consideration of the premises and the sum of One Dollar . . . , the indemnitors, and each of them . . . , jointly, and severally, do hereby covenant and agree: 1. To pay, or cause to be paid in advance, the premium or premiums for such bond or bonds . . . in accordance with any application for such bond or bonds or of any other agreement made, or that may be made, between the applicant and the Company or the surety or sureties executing such bond or bonds . . . 2. To indemnify the Company from and against all liability, loss, costs, damages, attorney's fees and expenses of whatever kind or nature which the Company may sustain or incur by reason or in consequence of executing any such bond or bonds as surety or co-surety . . . and which it may sustain or incur in making any investigation on account of any such bond or bonds, in defending or prosecuting any action, suit or other proceeding which may be brought in connection therewith, either against the Principal or Company or in anywise relating thereto . . . 3. That any property of any kind which may have been or may hereafter be pledged as collateral security on any one or more of such bonds may, at the option of the Company, be reclaimed as collateral security on any or all bonds coming within the scope of this agreement, whether theretofore or thereafter executed . . . ' and for the full and complete performance in all respects of the covenants of the indemnitors under this agreement. . . . ''

Appellant presents two points upon which he contends that the claim of respondent to hold the Improvement Act bonds as security on the bonds executed on behalf of G. Roy Smith, individually, is not supported. The first is that such bonds were not within the scope of the general indemnity agreement, because that agreement extended only to bonds in which the Citizens Construction Company had a substantial and beneficial interest. The second is that it was beyond the corporate authority of the officers of the Citizens Construction Company to execute any agreement of indemnity which would bind the corporation as indem-

nitor for surety bonds in which it had no interest, or, as briefly denominated, a corporate act *ultra vires*.

Taking up the second point first, as it directly attacks the validity of the agreement itself as a corporate act of Citizens Construction Company, we note from the record that the articles of incorporation of that company provide that the nature of the business and objects and purposes to be transacted and carried on are as follows: "1. To carry on and conduct a general engineering and constructing business, including therein . . . constructing . . . roads, highways . . . and to extend and receive any contracts or assignment of contracts therefor . . . 2. To enter into, make, perform and carry out contracts of any kind, for any lawful purpose, without limitation as to amount, with any person, firm, association or corporation . . . 9. The object and powers specified in these articles shall, except when otherwise herein expressed, be in nowise limited or restricted by reference to or inference from the terms of any other clause or paragraph in these articles of incorporation, but each shall be deemed to be the separate objects and powers, and said objects and powers and each of them shall be deemed to be in furtherance of and not in limitation of the general powers conferred by the general laws of the state. 10. For the purpose of attaining and furthering any of its objects to do any and all other acts and things, and to exercise any and all other powers which a copartnership or natural person could do and exercise, and which or hereafter may be authorized by law."

The indemnity agreement executed by the Citizens Construction Company contained this provision: "And whereas, the indemnitors have a substantial, material and beneficial interest in the obtaining of such bond or bonds."

Section 354, subdivision 97, of the Civil Code, as it was numbered prior to 1931 (now contained in sec. 341, subd. 6), provides that every corporation has power "to enter into any obligation or contracts or to do any acts incidental to the transaction of its business, or conducive to the attainment of the purposes of the corporation". In *Bates* v. *Coronado Beach Co.*, 109 Cal. 160 [41 Pac. 855], the Supreme Court held: "Whether a contract is 'essential' to the transaction of its ordinary affairs, or for the purposes of the corporation, is to be determined by the corporation,

or those to whom the management of its affairs is entrusted. If it is within the apparent scope of its organization, the fact that the contract has been entered into by it, or by its representative, is a determination on the part of the corporation that it is essential, and the corporation will not be permitted thereafter to question its effect." In *Woods Lumber Co.* v. *Moore,* 183 Cal. 497 [191 Pac. 905, 11 L. R. A. 549], after citing the above code provision and the case of *Bates* v. *Coronado Beach Co., supra,* the court said: "The court cannot determine that it (a contract of guaranty) is beyond the powers of the corporation unless it clearly appears to be so as a matter of law. With respect to the means which the corporation may adopt to further its objects and promote its business, its managers 'are not limited in law to the use of such means as are usual or necessary to the objects contemplated by their organization, but, when not restricted by law, may choose such means as are convenient and adapted to the end, though that be neither the usual means nor absolutely necessary' for the purpose intended. (*Winterfield* v. *Cream City Brewing Co.,* 96 Wis. 239 [71 N. W. 101].)" Herein the persons signing the indemnity agreement were united in interest in furthering the business of the construction company. It was to be reasonably expected that the making of the indemnity agreement, as executed, would advance the business of the company and enable it to secure the surety bonds it required. In view of the express powers contained in its articles to make any contract with any person for any lawful purpose, and to exercise any power for the purpose of attaining and furthering its objects which a natural person was authorized to do under the law in connection with the implied powers conferred by law and above quoted, it is clear that the charge of *ultra vires* must fail.

Furthermore, the defense of *ultra vires* is no longer looked upon by the courts with favor, particularly when relied upon as a shield to escape liability. ▆▆ Where the questioned contract of a corporation is neither *malum in se* nor *malum prohibitum,* the doctrine of *ultra vires* is limited in scope and application, and the contract should be enforced against the corporation when it has received the consideration or the benefits thereof. (*Davis* v. *Pacific Studios Corp.,* 84 Cal. App. 611 [258 Pac. 440]; *McQuaide* v. *Enterprise*

*Brewing Co.,* 14 Cal. App. 315 [111 Pac. 927].) █ Herein it appears that in consideration of its joint and several liability as indemnitor along with the individual indemnitors, the company received from respondent the surety bonds necessary for its business, and respondent in reliance thereon issued to G. Roy Smith the surety bonds as security for which it claims the right to hold the Improvement Act bonds. Clearly the company has received the benefits of the contract. We are of the opinion that the indemnity contract was a valid contract of the Citizens Construction Company.

█ Reverting to the first point presented by appellant and viewing it in the light of the preceding discussion of the question of *ultra vires,* it appears that appellant is not so much seeking a construction of the terms of the indemnity agreement as he is to secure an interpretation thereof limiting the scope of the agreement so as to exclude surety bonds issued thereunder to or for the individual benefit of any signer other than Citizens Construction Company. Appellant claims that no bond in which the company had no substantial or beneficial interest came within the scope of this agreement, and that because it is stipulated as a fact that the company was not a party to the action in which the release of attachment bond was given, and had no interest in any of the public improvement jobs for which the other surety bonds were issued to G. Roy Smith, it therefore follows that the company had no substantial or beneficial interest in the bonds so issued. This is clearly a *non sequitur.* Even if the company had no material or beneficial interest in the subject matter of the attachment suit or the public improvement jobs of G. Roy Smith, nevertheless it might reasonably have great interest in the credit of G. Roy Smith and in his securing surety bonds in prosecuting public improvement jobs; and as hereinbefore stated, the agreement in terms declared that "the indemnitors have a substantial, material and beneficial interest in the obtaining of such bond or bonds", and the bonds therein referred to are such bonds "as have been, and such as may hereafter be, applied for . . . by the indemnitors or any one or more of them." As stated above, the Supreme Court in the case of *Bates* v. *Coronado Beach Co., supra,* held that when the corporation has, or those to whom the management of its affairs have been entrusted have determined that a con-

tract is essential to the transaction of the affairs of the corporation, the latter will not thereafter be permitted to question the effect of that determination. And herein the very persons most interested in the company business were its officers and managers, and jointly executed the indemnity agreement in question.

There exists no uncertainty or ambiguity in the terms of this agreement which would supply a basis for the interposition by the courts by way of construction. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable or lawful (sec. 1636, Civ. Code); and for the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the language of the contract governs, if it is clear and explicit; and if in writing, the intention is to be ascertained from the writing alone, if possible (secs. 1637, 1638, 1639). Several contracts relating to the same matters, between the same parties, and made parts of substantially one transaction, are to be taken together, and the contract in question must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties (secs. 1642, 1643, Civ. Code); and in section 1858 of the Code of Civil Procedure it is provided that in the construction of a contract the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Herein appellant seeks to have inserted in the contract a clause of limitation of issuance of bonds so as to preclude any application for or issuance to or for the benefit of any of the indemnitors except the Citizens Construction Company. The contract provides in clear language for application for surety bonds "by the indemnitors or any one or more of them" who "jointly and severally" covenanted and agreed to pay all premiums thereon, and to indemnify against all liability by reason of issuance of "any such bond or bonds" and who further covenanted and agreed that "any property . . . pledged as collateral security on any one or more of such bonds may, at the option of the company, be reclaimed as collateral security on any or all bonds coming within the

scope of this agreement." From this language it clearly appears that any one or more of the indemnitors might apply for and receive a surety bond under the agreement, and that each indemnitor severally agreed to indemnify the company against liability or loss thereunder.

■ The sole question remaining, therefore, is concerning the right of the indemnity company to reclaim property pledged by one indemnitor as collateral on his bond, as collateral security on a bond issued to another indemnitor in his individual capacity. This right is in turn limited by the terms of the contract to those bonds "coming within the scope of this agreement".

As stated above, the bonds issued to G. Roy Smith were clearly within the authority and covenants of the agreement, and the Citizens Construction Company, a co-indemnitor, cannot now be permitted to deny that they come within the scope of the agreement. Such bonds were issued in reliance on the express terms of the agreement wherein the Citizens Construction Company declared that it had a substantial, material and beneficial interest in the obtaining of bonds applied for by any indemnitor, guaranteeing against loss thereunder and covenanting that property pledged to secure its own bonds might be reclaimed as security for bonds issued to any other indemnitor. Nowhere in the agreement is any language which would warrant the interpretation that the bonds referred to therein were to be limited to the company alone. To add such provision by construction would torture the agreement into a different form and would amount to a judicial addition thereto of that which is clearly omitted therefrom. Nor does recourse to the agreement with Elliott-Horne Company, executed some months later, furnish any basis for construction of the indemnity agreement. And the several applications for bonds by the Citizens Construction Company were all made pursuant to the general indemnity agreement, which was the source and fount of all these bonds, and in themselves contain nothing to render uncertain or ambiguous any of the provisions of the general indemnity agreement.

The judgment is affirmed.

Craig, Acting P. J., and Desmond, J., concurred.