[Civ. No. 11906. First Dist., Div. One. Feb. 9, 1942.]

ANTHONY F. PRATT et al., Respondents, v. ROBERT S. ODELL & COMPANY (a Corporation) et al., Appellants.

Freston & Files, Gordon L. Files and John L. Mace for Appellants.

Baldwin Robertson and Russell Breckenridge for Respondents.

WARD, J.—This is an action brought by plaintiffs on behalf of themselves and other minority stockholders of the State Guaranty Corporation against that body, its officers and direc-

tors and others to compel restitution of funds alleged to have been unlawfully expended on behalf of such corporation by said officers and directors. The appeal is by the defendants from the whole of the judgment in plaintiffs' favor, which also brings here for review an order appointing a receiver.

Respondents presented to this court a motion to dismiss the appeal upon the grounds that it was not taken by the Guaranty Corporation or pursuant to its authority; that the notice thereof was signed by attorneys for the individual judgment debtors not purporting to act for such corporation, and that the appeal was not prosecuted in good faith.

 It is not necessary that a receiver authorize an appeal by a corporation claiming to be aggrieved by the order appointing him if the corporation is a party of record to the proceedings from which the appeal is taken. (Code Civ. Proc., sec. 938; *Luckenbach* v. *Laer*, 190 Cal. 395 [212 Pac. 918]; *Golden State Glass Corp.* v. *Superior Court*, 13 Cal. (2d) 384 [90 Pac. (2d) 75]; *Berylwood Investment Co.* v. *Graham*, 43 Cal. App. (2d) 659 [111 Pac. (2d) 467]; *Braun* v. *Brown*, 13 Cal. (2d) 130 [87 Pac. (2d) 1009]; *Lilienkamp* v. *Superior Court*, 14 Cal. (2d) 293 [93 Pac. (2d) 1008].) It is not the receiver but the plaintiffs who object to the appeal of the corporation taken by the same attorneys who at the trial represented such body, its officers and directors. There is not sufficient divergence of interest between the corporation and its officers and directors to justify precluding the corporation, in behalf of its stockholders, from a fair presentation of the issues involved on this appeal.

 State Guaranty Corporation retains its corporate entity and has regularly appealed. Ordinarily an appeal should not be dismissed on motion of a respondent without the consent of appellant. (*Woodbury* v. *Nevada etc. Ry. Co.*, 120 Cal. 367 [52 Pac. 650].) An appeal will not be dismissed upon such a technical objection (*Sharick* v. *Galloway*, 12 Cal. App. (2d) 733 [55 Pac. (2d) 1196]), when upon its face there is no showing of lack of good faith. The motion to dismiss was denied after oral argument before the submission of the cause upon its merits.

 There was also filed by respondents an application for leave to produce additional evidence under section 956a of the Code of Civil Procedure. The purpose of the application was to introduce a certified copy of a decision, in the form of a memorandum opinion, directing counsel to prepare findings

in an action wherein Pacific States Savings & Loan Company, a corporation (subsidiary of the State Guaranty Corporation, appellant herein), was plaintiff, and Ralph W. Evans, individually and as Building and Loan Commissioner of the State of California, and others appeared as defendants. The order, subsequently signed, set forth that the Pacific States Savings & Loan Company, hereinafter referred to as Pacific States, did not commence that action in good faith; and that a petition for allowance and payment of attorneys' fees on its behalf was denied but that there was reserved to plaintiff or its attorneys the right to subsequently apply for a proper allowance "for legal services heretofore rendered." In the opinion rendered by the trial court in that case, the court stated: "The justification or non-justification of the seizure [of the assets of Pacific States] will not be and cannot legally be determined until there is a decision rendered in the main case."

The parties to the action by the Pacific States are different from those in the present case, and the above mentioned order is not final, but subject to possible reversal by a reviewing court, the legal effect thereof simply being that a particular controversy in the trial of that action has been decided, but its correctness and conclusiveness is an open question until affirmed on appeal or it becomes final by failure to appeal. Eliminating questions of difference in parties in the respective actions, and of the *identical* issues involved—which need not be definitely stated or determined at this time—the litigants herein would be placed in an awkward and anomolous position if on review the above order should be regarded as binding, and subsequently it should be set aside on motion for a new trial on the merits of that case, or reversed on appeal. The application for leave to produce additional evidence before this court was denied, without prejudice, prior to submission of the present appeal.

The Guaranty Corporation is a holding company whose principal asset is all of the guarantee stock of Pacific States. It also owns investment certificates of the latter company of the face value of approximately $80,000, and, through the Pacific States Auxiliary Corporation, of which it owns all of the outstanding capital stock, the Guaranty Corporation owns additional investment certificates in Pacific States of the face value of approximately $88,000. The board of directors of the Guaranty Corporation is composed mainly of persons who are officers and directors of its subsidiary, Pacific States.

On March 4, 1939, under the authority of section 13.11 of the Building & Loan Act (Stats. 1931, pp. 483-539; Deering's Gen. Laws, 1937, Act 986), the Building & Loan Commissioner of the State of California, to whom we will refer as the commissioner, took possession of the property, business and assets of Pacific States. Two days thereafter, under the provisions of section 13.12 of the same act (Stats. 1931, p. 540), Pacific States as an aggrieved party filed an action against the commissioner in the Superior Court of the City and County of San Francisco to enjoin the seizure. (*Pacific States* v. *Evans, Superior Court Civil No. 286,830.*) A final judgment has not as yet been rendered in that action.

The material facts do not seem to be a subject of controversy. The trial court herein found that, following the seizure by the commissioner, ''Robert S. Odell, as President of Pacific States Savings and Loan Company, acting in the name of the said corporation, entered into a contract with the American Appraisal Company, engaging that company to make an appraisal of the properties of Pacific States Savings and Loan Company.'' The latter thereupon requested its parent company, Guaranty Corporation, to pay any and all expenses incurred in connection with the prosecution and resistance of a liquidation of its affairs, including salaries of its officers whose employment was necessary to the success thereof, agreeing to reimburse the parent company for any and all amounts and expenses advanced upon its written request, signed by its president, or any vice-president, and secretary, and under the corporate seal of the company. These matters were duly set forth by resolution in the minutes of regular meetings of the Guaranty and Pacific States corporations. The resolutions in this respect refer to the seizure as unauthorized and unjustifiable, and state that the retention of the assets of Pacific States by the commissioner will have a detrimental effect upon such company and its investors; that the Guaranty owns all of the outstanding capital stock of the Pacific States, and through subsidiary companies, a large block of its investment certificates; that liquidation would result in the sacrifice of properties to the great loss of Pacific States and the Guaranty Corporation. In its resolution the Guaranty Corporation agreed to assume indebtedness incurred and to pay certain salaries of officers of Pacific States from the date of the seizure until further order of the board of directors. These amounts were subsequently paid by Guaranty. It does not appear that

any of the funds were used in any manner except as authorized by the resolutions of the two companies.

Subsequently an investors' committee, composed originally of about 30 certificate holders of Pacific States, was formed. There is evidence that the organization was inspired by officers of Pacific States. From a small body it grew until there were over 8000 members, "who owned face value of investment certificates of about $12,000,000." Its purpose was to intervene in the suit of *Pacific States* v. *Evans, supra*; subsequently it took an active part in legislative matters wherein Pacific States and Guaranty were materially interested. The Guaranty Corporation paid all expenses incurred through the activities of the investors' committee. The record shows that in excess of 85 per cent of the Pacific States investors favored the return of management from the commissioner to the directorate of that company. During this period the commissioner served upon the Guaranty Corporation, the sole stockholder of Pacific States, an assessment upon the stock of the Pacific States in the amount of $628,600.

Judgment was entered herein that plaintiffs "for the benefit of State Guaranty Corporation, and, State Guaranty Corporation . . . do have and recover . . . jointly and severally" from named defendants certain specified sums. In addition the judgment provided: "That plaintiffs, for the benefit of State Guaranty Corporation, and State Guaranty Corporation, a corporation, do have and recover from defendants Robert S. Odell, A. E. Falch and C. F. Adams, Jr., jointly and severally, the sum of one hundred fifty-eight thousand, two hundred two and 65/100 dollars ($158,202.65), making in the aggregate the sum to be had and recovered against said last-named defendants, jointly and severally, the sum of one hundred eighty thousand four hundred seventy-two and 65/100 dollars ($180,472.65), together with interest thereon at the rate of seven per cent (7%) per annum from the 4th day of May, 1940, until the same be repaid into the treasury of State Guaranty Corporation." The officers and directors of the Guaranty Corporation, individually and as such officers and directors were restrained from paying from the treasury of the Guaranty Corporation or that of the Pacific States Auxiliary Corporation any debts or obligations incurred by Robert S. Odell, Robert S. Odell & Company or any defendant individually or jointly in the name of such parties or of the

Pacific States. Payment of salaries to any officers, agents or employees of Pacific States was likewise enjoined, as was the payment of any further sums for the account of the investors' committee, or the advancing of any funds on behalf of the prosecution or defense of Pacific States. A receiver was appointed for the Guaranty Corporation for the purpose of enforcing the collection of the judgment in his own name as such receiver. Plaintiffs were awarded counsel fees of $5,000, plus "a sum equal to thirty-three and one-third per cent (33 1/3%) of the first thirty thousand dollars ($30,000) so recovered; fifteen per cent (15%) of the next fifty thousand dollars ($50,000) so recovered; and ten per cent (10%) of all of the balance of such recovery." The $5,000 amount was based upon a finding that $50,000 drawn from the Guaranty treasury several days prior to the filing of this action and placed in a San Francisco bank as a "defense fund," and repaid to the Guaranty several days after the commencement of this suit, would not have been so repaid except for the force of a restraining order.

The trial court found that it was unlawful for the Guaranty Corporation to finance the action of *Pacific States* v. *Evans, supra.* For the purpose of consideration herein such expenditures consisted of: $35,000 to the investors' committee, and the remainder, salaries of officers and directors as compensation, fees and charges of an appraisal company, etc. The first amount, $35,000, was declared to be "an unlawful use and diversion of the assets of State Guaranty Corporation"; the others, to be "a loan of money and a payment of the obligation of the officers and directors of State Guaranty Corporation and . . . of Pacific States Savings and Loan Company . . . in violation of the provisions of sec. 366 of the Civil Code of the State of California."

Among the various questions raised on appeal are the following: Is the injunction proper? Did the trial court have the right or power to appoint a receiver for the Guaranty Corporation? Is plaintiffs' counsel entitled to $5,000 additional attorney's fee for "saving" money which the Guaranty Corporation merely reserved and never expended? May a judgment be properly entered against the Odell Company, which merely received, and later paid out, some of the money alleged to have been wrongfully used? Are plaintiffs estopped and barred by laches? In view of the conclusion on the main

issue of this case, which follows, it is not necessary to determine the foregoing questions.

 In support of the declaration in the conclusions of law that the acts and conduct of the defendants were in violation of the provisions of section 366 of the Civil Code, respondents contend (1) that Guaranty is a foreign corporation only nominally, and that under its Delaware articles of incorporation it is bound by the laws of California; (2) that payment of the amounts authorized by its board of directors was a payment by individuals, and constituted a loan to individual directors of Pacific States; upon the theory that after the seizure of such company by the commissioner, its officers and directors became personally liable for any obligations assumed by them in the name of the corporation.

 A foreign corporation doing business in this state is amenable to process of the courts of this state, and relief may be granted against such corporation irrespective of the effect upon its internal affairs. (*Sharp* v. *Big Jim Mines,* 39 Cal. App. (2d) 435 [103 Pac. (2d) 430]; *Wait* v. *Kern River Mining etc. Co.,* 157 Cal. 16 [106 Pac. 98].) California has power to reasonably regulate foreign corporations doing business in this state, and to determine, by legislative enactment, the law of which state shall be applicable to the settlement of controversies between such corporations and others.

 The regulation in the instant controversy is plain and specific. Section 366, found in div. 1, pt. 4, tit. 1, ch. 14 of the Civil Code, refers to loans and obligations incurred by officers of a corporation. The definitions of the terms used in title 1 are found in section 278, Civil Code, which in part read: " 'Corporation,' unless otherwise expressly provided, refers only to a domestic corporation." There is no express provision otherwise in section 366. It must be held, therefore, that the section does not apply in the present case. The liability of a director in a foreign corporation is determined by Civil Code, section 412: "The directors of a foreign corporation transacting business in this State shall be liable to the corporation, its shareholders, creditors, receiver, liquidator, or trustee in bankruptcy for the making of unauthorized dividends, purchases of its shares, or distributions of assets, or false certificates, reports or public notices or other violations of official duty, *according to the laws of the State of incorporation,* whether committed or done in this State or elsewhere.

Such liabilities may be enforced in the courts of this State.'' (Italics added.)

Respondents place great weight upon *Thomas* v. *Wentworth Hotel Co.,* 158 Cal. 275 [110 Pac. 942, 139 Am. St. Rep. 120], citing *Pinney* v. *Nelson,* 183 U. S. 144 [22 S. Ct. 52, 46 L. ed. 125]. In the Thomas case, a stockholder appealed from a judgment against him for his proportionate share of indebtedness evidenced by promissory notes payable in this state. The court said (p. 281) : ''The law of this state declares in express terms that 'the liability of each stockholder of a corporation formed under the laws of any other state or territory of the United States, or of any foreign country, and doing business within this state, is the same as the liability of a stockholder of a corporation created under the constitution and laws of this state.'' Section 322 of the Civil Code at that time specifically mentioned foreign corporations. Section 366 makes no reference to foreign corporations. The liability of a director of a corportion for a violation of official duty may be enforced in this state, but according to the laws of the state of incorporation.

In some respects respondents argue upon the theory that the present action was instituted by minority against majority stockholders, It may be assumed that the subject of plaintiffs' cause of action is of general interest to all owners of capital stock of the Guaranty Corporation, and that all shareholders who so elected could assist in the prosecution thereof. However, the suit is brought by plaintiff shareholders on behalf of themselves and all other stockholders of the Guaranty Corporation against the Odell Company, Robert S. Odell, as president thereof, his wife, the Guaranty Corporation, its officers, directors and subsidiaries and others. It is respondents' claim that the various corporations are interlocked in interest, and that Odell is the dominating figure and controller of the official acts of all officers and directors. The action, therefore, is not by ''minority stockholders against majority stockholders,'' so that arguments and citations applicable to that situation may be disregarded. The interests of the stockholders of the Guaranty Corporation are in proportion to the number of shares held, but their rights and privileges are identical, though there may be an honest difference of opinion as to the best method to pursue in the protection of such rights and interests.

So far as the judgment is based upon section 366, Civil Code, the determination of the appeal could be reached at this point. However, respondents urge that a loan to an officer is equally unlawful under the laws of the State of Delaware.

In the interests of justice, with the purpose if possible of making findings of fact different from those of the trial court, but in accord with the evidence adduced, it has been determined to examine such evidence in order to discover whether it comes within the purview of the law of the State of Delaware. (Code Civ. Proc., sec. 956a.) To that extent it will be proper to take judicial notice of the laws of Delaware and the interpretation thereof. (Code Civ. Proc., sec. 1875.) Section 36 of the Delaware corporation law provides: "No corporation created under this chapter shall make any loan of money to any officer of such corporation." In the present case, as stated, the Guaranty advanced various sums of money. A loan is "A contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows." (38 C. J., p. 126.) There is no evidence in this case that a loan was made by Guaranty to any officer of that corporation as an individual. Assuming, but not deciding, that the section is broad enough to include officers of a subsidiary corporation, there is no evidence that a loan was so made to such an officer.

It is respondents' theory that the officers and directors of Pacific States became personally responsible as individuals for all monies so paid by Guaranty on behalf of Pacific States. It is also urged that Odell, as president, in signing the contract with the appraisal company on behalf of Pacific States, assumed an authority which he did not possess. It is not contended that had the seizure not been made, Odell would not have been authorized to sign such a contract. Respondents' theory is that, the seizure having been made, Odell assumed an agency for which there was no authorization in law or in fact, and that he thereby became responsible as principal to the appraisal company (Civ. Code, sec. 2343); and that the credit so given by that company was bestowed upon him personally. Respondents' position would be worthy of consideration if the appraisal company had been injured thereby, or if Odell had entered into the written contract in the name of

his principal without believing in good faith that he was authorized to do so, or if the act was wrongful in its nature. There is no evidence that the signing of the contract by the president of Pacific States was to the detriment of the appraisal company; nor is there evidence that Odell did not believe he was authorized to make the contract, or that it was in excess of his authority. On the contrary, his action in this respect met with the approval of Pacific States. In the absence of evidence herein that Odell imposed upon the appraisal company—respondent does not call attention to such evidence, nor have we been able to find substantiation therefor in that adduced—it would be highly technical to hold in the face of the record that a reasonable inference could be drawn that Odell knew he was not authorized to make the contract.

Was Odell's act wrongful in its nature? There was no evidence of fraud or misrepresentation. The burden of respondents' contention is that all of the acts by the interested companies were made to serve the private interests of Odell. They stated in the application to produce additional evidence "that the trial court . . . refused to permit plaintiffs to introduce any evidence respecting" the necessity of the take-over and that "the action of the defendants herein in resisting said take-over was for the purpose of serving the private interests and desires of Robert S. Odell." The good faith of the defendants in this case was a vital question to determine. In the event that this matter should be reheard, and the pleadings should so allege, such evidence would be admissible.

As the record stands, the important question appears: Was the agreement by Guaranty to pay the salaries of Pacific States' officers, and other expenditures, after the seizure, an unlawful act on the part of the Guaranty? The answer depends in a great measure upon the construction that may be placed upon section 13.12 of the Building and Loan Act. In reaching a conclusion on this question, and on all other questions raised on this appeal, the opinion herein is not to be construed as a determination of the issues involved in *Pacific States* v. *Evans, supra.*

Under the provisions of section 13.12, whenever the property, business and assets of any building and loan association have been taken possession of by the commissioner, the aggrieved *association* may seek to enjoin further proceedings. No provision is made for such a direct contest by a stock-

holder, certificate holder, director or officer of the company, the statute confining the institution of such action to the association. A practical question is immediately suggested. The commissioner is in control of the association, and while the corporate entity of that body continues for the purpose of contesting the seizure (sec. 13.12, *supra*; *Hill* v. *Bank of San Pedro,* 41 Cal. App. (2d) 595 [107 Pac. (2d) 399]), there is no immediate means financially of prosecuting the action against the commissioner. It must be assumed that when the legislature gave to the association the right to declare an offensive legal war on the acts of the commissioner, there was no intention to deprive the challenger of the right to prepare for and use all proper and fair means in good faith to maintain the contest to a successful conclusion. It would appear to be the duty of the association, if in fact aggrieved, to protect and maintain its integrity against the possibility of mistaken judgment on the part of the commissioner. "The successful achievement of the object of the statute requires broad rather than limited powers, and justifies a liberal rather than a strict construction." (*Wilson* v. *Superior Court,* 2 Cal. (2d) 632, 637 [43 Pac. (2d) 286].) Such conclusion applies equally to a statutory right or privilege bestowed upon an association as upon a commissioner. It cannot be assumed that the commissioner would expend the funds of the association in defense of the seizure (*Evans* v. *Superior Court,* 14 Cal. (2d) 563 [96 Pac. (2d) 107]), and at the same time advance funds to support an attack thereon. The right to enjoin further proceedings would be without avail if the association, acting in good faith, were precluded from seeking financial assistance for the prosecution of the action. An appeal to the trial court for the allowance of fees to attorneys and for expenses of conducting the litigation would make proper for the court's consideration whether the suit was brought in good faith, a finding on which would rest in the court's reasonable discretion. (*Anderson* v. *Great Republic L. Ins. Co.,* 41 Cal. App. (2d) 181 [106 Pac. (2d) 75].) Ordinarily the trial court would not be able to determine this question until evidence had been presented on behalf of the association, whose solvency might depend upon the value of the assets, real estate and otherwise. This might require the employment of appraisers, a great deal of consultation between officers of the association and the attorneys represent-

ing it as to factual matters and figures, and services and expenses of various kinds. The association, without financial aid, is called upon to protect its position against the commissioner, who is empowered to employ special counsel, accountants and appraisers, and pay therefor out "of the funds of the particular association involved." (*Evans* v. *Superior Court, supra,* p. 572.) In a word, while the association is given the right to continue its corporate existence for the above limited purpose, such existence as a practical matter seems to depend upon its ability to finance itself; otherwise the aggrieved party must forego its right to enjoin the commissioner.

There is no statutory provision prohibiting the association from obtaining financial aid from other sources. Seeking aid from a stockholder, personal or corporate, seems a reasonable and practical method of procedure, particularly if the stockholder owns the controlling interest in the association. If the stockholder, or any other party, and the association, without intent to defraud, in good faith and in the interests of other stockholders and certificate holders, make financial arrangements within statutory provisions for the conduct of a suit to enjoin the commissioner, we can see no legal objection thereto, and certainly cannot hold the contract with the appraisal company, or the payment of salaries to officers of Pacific States, who actually performed services in assisting that company in its action against the seizure, to be wrongful in nature or violative of any statute to which attention has been called on this appeal. To hold otherwise would in some instances result in the abolishment of a right granted by the legislature.

One further point remains for consideration. The trial court found that the Guaranty, a corporation organized under the laws of the State of Delaware and doing business exclusively in the State of California, is a holding company. Respondents contend that as such it had no right to advance $35,000 to the investors' committee; "that Pacific States, as a corporation, in truth has no case against the Building and Loan Commissioner. The real parties opposing the Building and Loan Commissioner are those who prior to the seizure had control of the assets of Pacific States. This means one man only—Robert S. Odell." There is nothing in the record from which this court may determine that the advancement was

improper. The all important question of good faith on the part of defendants is not an issue on this appeal.

As stated, the court found that the $35,000 expenditure was "an unlawful use and diversion of the assets." Relative to the diversion of assets, it did not find that the funds were embezzled or that a loan or obligation was created on the part of the individual directors within the purview of section 366, *supra*. The original complaint alleged that $25,000 of this amount had "been expended by said defendants in connivance and conspiracy with and under the direction of Robert S. Odell." This theory was abandoned. During the trial "to conform to the proof," an amended complaint was filed which alleged that the $35,000 was paid by Guaranty "through the unlawful and unwarranted acts of said individual defendants . . . without consideration."

The investors' committee, though not always successful in its undertakings, did perform services. It sought to enjoin the commissioner from expending funds of Pacific States in defending the action to enjoin seizure by him, and an injunction was granted by the trial court so restraining him. An application by the commissioner to the superior court for relief from the restraining order was denied, but a rehearing granted. In a prohibition proceeding, the commissioner was upheld, three of the justices dissenting. (*Evans* v. *Superior Court, supra.*) Other services were also performed by the investors' committee consisting of taking an active part in legislative matters. There is no proof that any of the funds were unlawfully, unethically, improperly or unwisely expended.

If a corporation acts in good faith, it may expend funds in the prosecution of litigation to which it is not a party but in which it has an interest, or in the assistance of other organizations from which it expects lawfully to benefit. In *Woods Lumber Co.* v. *Moore*, 183 Cal. 497, 502 [191 Pac. 905, 11 A. L. R. 549], the court said: "With respect to the means which the corporation may adopt to further its objects and promote its business its managers 'are not limited in law to the use of such means as are usual or necessary to the objects contemplated by their organization, but, where not restricted by law, may choose such means as are convenient and adapted to the end, though that be neither the usual means, nor absolutely necessary' for the purpose intended." (*Singh* v. *U. S.*

*American Malwa Sudharak Soc.*, 5 Cal. (2d) 405 [54 Pac. (2d) 1099]; *Rabbitt* v. *Union Indemnity Co.*, 140 Cal. App. 575 [35 Pac. (2d) 1066], 19 C. J. S., pp. 718-720; 13 Am. Jur., p. 824.)

Independently of section 13.12 of the Building and Loan Act the rule is well settled that a parent corporation may ordinarily expend money in defense of its subsidiary. But neither that rule nor any other rule mentioned in this opinion would warrant Guaranty in expending any sum of money at all if it knew or under the circumstances should have known that Pacific States did not have a defense to the seizure. As already pointed out, Pacific States could be reimbursed for expenditures made in the action brought to challenge the seizure only if it acted in good faith. (*Anderson* v. *Great Republic L. Ins. Co., supra; Barker* v. *Southern Bldg. & Loan Association*, 181 Fed. 636; *Esarey* v. *Pierson*, 84 Ind. App. 109 [141 N. E. 87]; Annotation, 89 A. L. R. 1527.) The trial court found that ''all of the officers and directors of defendant State Guaranty Corporation, and all of the officers and directors of Pacific States Auxiliary Corporation, and all of the officers and directors of State Guaranty Auxiliary Corporation, and all of the officers and directors of Pacific States Savings and Loan Company, a savings and loan association, were and all other officers and directors of said corporation have been since their respective organizations placed in their respective offices and directorships by Robert S. Odell and Robert S. Odell & Company and all of said persons and each of them that are now officers and directors remain in their said offices and in the said directorships at the nomination and pleasure of Robert S. Odell and Robert S. Odell & Company, and at all times in these findings mentioned have acted, now act and in the future will act in their respective positions, solely and only upon the command of Robert S. Odell and Robert S. Odell & Company.'' If it could be shown that Odell in bringing the contest proceedings in behalf of Pacific States acted in bad faith, *it could be logically argued* that he acted in bad faith in securing the agreement of Guaranty to advance money to finance the contest. In the final analysis, therefore, the liability of appellant would seem to turn on the good faith issue.

On the retrial, if one be had, evidence should be taken on that issue and findings made. If it should be found that the directors of Guaranty acted in good faith, based on a reason-

able belief that good cause to challenge the seizure existed, then they are not liable in this action for any sum expended for the defense of Pacific States. But if it should be found that the directors of Guaranty knew or should have known that the commissioner had valid grounds for the seizure and that the contest action was brought in bad faith, then the directors of Guaranty are liable for any sums expended for the defense of Pacific States.

Subsequent to the submission of the appeal herein, upon stipulation of the parties the appeal of Gerald R. White was ordered dismissed. As to all other appellants, the judgment is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied March 11, 1942, and respondents' petition for a hearing by the Supreme Court was denied April 2, 1942. Carter, J., voted for a hearing.