(No. 7114. December 23, 1943.)

CARSTENS PACKING COMPANY, a corporation, Appellant, v. UNEMPLOYMENT COMPENSATION DIVISION OF THE INDUSTRIAL ACCIDENT BOARD, of the State of Idaho, Respondent.

[144 Pac. (2d) 203.]

Rehearing denied January 11, 1944.

Delana and Delana for appellant.

Bert H. Miller, Attorney General, Thomas Y. Gwilliam and W. B. Bowler, Assistant Attorneys General, for respondent.

AILSHIE, J.—This is an appeal from a decision of the Industrial Accident Board and comes here for consideration under the provisions of the italicized proviso to sec. 18-5, chap. 182, 1941 Session Laws, which chapter is an amendment to chap. 239 of the 1939 Session Laws (p. 563, at 577). Subdivision (f) of sec. 18-5 of the 1939 Act, defines "covered employment" and contains only the following words, "*Agricultural labor." Subdivision (f) of the corresponding chapter and section of the 1941 Session Laws, reads as follows:

"(f)   Services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops or the raising, feeding or managing of livestock, bees or poultry, or in connection with the processing, packing or

marketing of the produce of such farm where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; *provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment' services performed in the employ of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would otherwise be termed covered employment within the meaning of this Act."* (Italics inserted.)

The case was submitted to the Industrial Accident Board by stipulation of facts, which included "all of the evidence heard and admitted in the matter of the Carstens Packing Company for refund before the Industrial Accident Board . . . as shown in the transcript . . . in said matter," being the transcript in the case of *Carstens Packing Co. v. Industrial Accident Board,* 63 Ida. 613, 123 P. (2d) 1001, decided under subsec. (f), sec. 18-5, chap. 239 of the 1939 Sess. Laws.

Appellant operates slaughtering and packing houses at Tacoma and Spokane, Washington, and owns and operates a large cattle ranch in Montana. It also owns three acres of land near Kimberly, Idaho, and has been lessee since 1927 of a 10-acre tract; since 1935 a 7-acre tract and a 28-acre tract near Jerome, Idaho. Sugar beets have been grown on about eight acres of the 28-acre tract; and the rest of the land has been covered with buildings, sheds, corrals, and for feeding yards used in feeding and fattening cattle and hogs. An average of 500 head of feeder cattle are transferred each year from Montana to Kimberly and Jerome, to be fed and fattened; and in addition thereto, appellant annually buys, feeds and fattens around 60,000 head of hogs, 8,500 cattle and 6,000 sheep at its Kimberly and Jerome feed yards. The hog feeding and fattening is a year-around business, with approximately the same number being fed and fattened through the different seasons. All the sheep and about 90% of the cattle are handled by appellant and fed and fattened from October 1st to April 1st, and about 10% during the remainder of the year. Except for the sugar beets raised by appellant, the balance of the feed used in these operations is purchased from farmers in the neighborhood. The feeder livestock is not ready for slaughtering and butchering purposes until fed and fat-

tened. Of the feeder livestock thus handled at Kimberly and Jerome, the stipulation of facts show the following:

"9. That of said feeder livestock purchased, fed and fattened by the Carstens Packing Company in said operations at Kimberly and Jerome, Idaho, about 50% are shipped to the Carstens Packing Company's packing houses· at Tacoma and Spokane, Washington, for slaughtering, and the remainder of said livestock are shipped and sold to eastern markets at Denver, Colorado, Omaha and Chicago and to southern markets at San Francisco, and Los Angeles, and western markets at Portland, Oregon, for slaughtering, depending upon the state of the market at said different places.

"10. That the purchasing of said feeder livestock and feeding and fattening of the same, and the purchasing of feed for them is done and carried on in the same way as is being done by farmers and stockraisers and livestock feeders in the vicinity of Kimberly and Jerome, Idaho."

Half the employees at Kimberly and Jerome are employed the year around; the others are employed only from October first to April first, the regular average number of employees in Idaho being about thirty. The packing plants at Tacoma and Spokane were operated many years before fattening operations were commenced in Idaho. Other packing companies in Washington, Oregon, Montana, and Idaho do not generally conduct such feeding and fattening operations.

The Industrial Accident Board found and concluded that the principal occupation of appellant is "packing, processing and dealing in meats and meat products and the slaughtering and manufacturing of slaughtered products"; that the feeding and fattening operations carried on by appellant in Idaho are "only incidental" to such principal occupation; that the services rendered in connection with such feeding and fattening operations, within the state of Idaho, are "*only incidental*" to the principal occupation, and that such services are consequently within the meaning of the term, "covered employment," as defined by secs. 18-3, 18-5, and 7-5, chap. 182, of the 1941 Session Laws.

The determination of this case depends upon the construction to be given to the proviso contained in subd. (f) of sec. 18-5, chap. 182 of the 1941 Session Laws (pp. 393-394) above quoted.

If the operations carried on by Carstens at Kimberly and Jerome were "only incidental" to the principal business of operating packing houses at Spokane and Tacoma, then the services rendered in connection therewith were *"covered employment"*, within the meaning of sec. 18-3 of the Act.

■ It seems clear, from the facts, however, that the packing houses at Spokane and Tacoma run independently of the feeding and farming business carried on in Idaho and could continue to do so without the Idaho operations. On the other hand, feeding and marketing operations conducted in Idaho could just as well run and operate without the packing plants. In fact, the record shows that at least 50% of the stock fed in Idaho are sold to dealers other than the Carstens Packing Co. Otherwise stated, the conduct and operations of the one are wholly independent of the other; each may run without the aid, assistance, cooperation, or existence of the other. Neither is *"only* incidental" to the other. Furthermore, we do not think the legislature, in adopting this proviso, intended to declare an Idaho industry or business as "only incidental" to independent industries or operating plants from 400 to 600 miles distant in another state.

The contention, that the 1941 session of the legislature intended to remove this class of service and operations from the exempted class, by the adoption of subsections (e) and (f), sec. 18-5, chap. 182, is not sustained by the context of the act. Subsection (f), supra, is numbered and designated to take the place of the corresponding subsection of chap. 239 of the 1939 Session Laws (p. 577). That subsection contained only two words: ('39 S. L.) "*Agricultural labor"; see also *Carstens Packing Co. v. Indus. Accident Bd.*, 63 Ida. 613, 123 P. (2d) 1001. Subdiv. (f) was evidently inserted in chapter 182 of the 1941 Session Laws, for the purpose of enumerating the varieties of "agricultural labor" which were entirely undescribed or unenumerated in the 1939 statute. The words "only incidental" were, no doubt, intentionally employed in writing the new subsection *proviso*.

Section 18-5 of both the 1939 Session Laws ('39 S.L., chap. 239, p. 577) and the 1941 amendatory section ('41 S.L., chap. 182, p. 393) is devoted to "excepted employment" and undertook to enumerate the character of service which was *not* intended to be included within the terms, "covered employment." Subsec. (f) of the amendment, as

heretofore noted, was entirely new matter, the original sub-sec. (f) containing only the words "agricultural labor." (See *Big Wood Canal Co. v. Unemployment Compensation Div.*, 61 Ida. 247, 100 P. (2d) 49; *Batt v. Unemployment Comp. Div.*, 63 Ida. 572, 123 P. (2d) 1004, 39 A.L.R. 1157.) After enumerating various kinds and character of services of excepted employment, the legislature attempted to make it plain that there should not be excluded from the covered employment services performed in the employ of any person or persons operating a farm or farms *"only incidental"* to a principal occupation or occupations which would other-wise be termed "covered employment."

It will be observed that the legislature, in writing this proviso, was not content with simply saying "services . . . incidental to a principal occupation," but also modified and limited the word "incidental" by the word "only." Pausing for a moment to consider the meaning of these terms, we are informed by the lexicographers, that "incidental" is "something that is only an adjunct or incidental" to something else, which *something else* is evidently the princi-pal thing to which the other is "incidental."

Funk & Wagnalls Stand. Dictionary defines "incidental":

"1. Occurring in the course of or coming as a result or an adjunct of something else; concomitant; as, *incidental* expenses.

"2. Happening or coming without regularity or design; foreign or subordinate to the general purpose; occasional; casual; accidental; as an *incidental* remark; *incidental* vari-ations; an *incidental* acquaintance."

Black in his Law Dictionary, defines "incidental" as:

"Depending upon or appertaining to something else as primary, something necessary, appertaining to, or depend-ing upon another which is termed the principal: something incidental to the main purpose." (Citing Robin Goodfellow (D. C.), 20 F. (2d) 924, and a number of other cases.)

The word "only" means, according to the authorities, when used as an *adjective*, "Sole, solitary, alone, single." When used as an *abverb*, "1. Merely, barely, simply, and nothing else. 2. Solely, no other than. 3. Single, without more." (Soule's Dictionary of Eng. Synonyms; see also Ordway's Synonyms and Antonyms; Funk & Wagnall's Stand. Dic.; 46 C.J., p. 1106, sec. 3.)

██ We are therefore forced to conclude that "only incidental", as herein used, means service performed for no other purpose than for the use, benefit and promotion of the "principal occupation or occupations which would otherwise be termed covered employment." It comprises a limitation necessarily difficult of application under a variety of facts and circumstances which may frequently arise.

In *National Labor Relations Board v. Tovrea Packing Co.,* 111 F. (2d) 626, 628, the Circuit Court of Appeals for the Ninth Circuit, in reviewing an order of the National Labor Relations Board, in a case where somewhat similar facts existed, said:

"The nine employees whose reinstatement has been ordered were working in the mill and feeding pens at the time of their discharge, and respondent claims that their work was agricultural in character and that according to the terms of the Act [Sec. 2(3)] the board's order could not properly apply to them. The viewpoint of respondent is, that the adjacent mill and feeding pens are operated separately and practically independently of the packing plant, and that the work performed is practically the same as that done on respondent's stock feeding ranches, which of course is agricultural work. That, so runs the argument, since the status of the employee 'depends entirely on the nature of the work which he is employed to perform', it follows that the mill and feeding pen employees occupy the status of agricultural employees.

"The difficulty with respondent's position is: (a) The feed mill and feeding pens adjacent to the packing plant are maintained as an incident to and not independent of the operation of the packing plant; (b) The nature of the work alone does not determine the status of workers under the provisions of the Act. We are not called upon to determine the status of the employees on the ranches but we do not hesitate to say that while the grinding of the feed and the actual feeding on the ranches may be quite similar to such work done adjacent to the packing plant, divergent circumstances may well throw the employees of the ranches without and those of the packing plant within the terms of the Act."

Upon oral argument some suggestion was made on behalf of respondent, to the effect that feeding of livestock and conducting farming operations were not within the powers of the Carstens Company under their corporate charter.

No such issue is raised by the record on this appeal. It is not embraced within appellant's specifications of error and respondent has taken no cross-appeal. On the contrary, respondent states the issue in its brief, confronting the court as follows: "The question, therefore, presented for the court's determination is as to whether or not the operations of the Carstens Packing Company within the State of Idaho are only incidental to the principal occupation of packing and processing." We therefore pass, without further consideration, any question as to the operations of the appellant within the State of Idaho being in excess of its corporate powers.

The order of the board is reversed and the cause is remanded to the board, with direction to take further proceedings consistent with the views herein expressed. Costs awarded to appellant.

Budge and Dunlap, JJ., concur.

GIVENS, J., dissenting.—This court in *Carstens Packing Co. v. Industrial Accident Board*, 123 P. (2d) 1001, held that appellant was not a covered employer under the unemployment compensation statute as it existed prior to 1941.[1] The present action arises under the emphasized proviso of the amendatory sec. 18-5, chap. 182, 1941 Session Laws, pp. 393-4, which provides:

"The term 'covered employment' shall not include—
"* * *

"(f)  Services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops or the raising, feeding or managing of livestock, bees or poultry, or in connection with the processing, packing or marketing of the produce of such farm where such processing, packing or marketing is an incident to the ordinary farming operations of such individual owner or tenant; *provided, however, that nothing in this subsection shall be construed to exclude from the term 'covered employment'*

---

[1]"Sec. 18-5.  Excepted Employment.
"The term 'covered employment' shall not include—
"* * *

"(f)  *Agricultural labor;"
"* * *"
(1939 S.L. 577.)

*services performed in the employ of any person or persons who operate a farm or farms only incidental to a principal occupation or occupations which would otherwise be termed covered employment within the meaning of this Act."*

The cardinal rule of statutory construction constituting the primary premises from which we proceed in correctly interpreting the amended statute is that "where a statute is amended by changing the language from that used in the original statute, the presumption arises that a change in application was intended." (*Anderson v. Rayner*, 60 Ida. 706, at 713, 96 P. (2d) 244.). The first portion of the amendment enumerates those things which are, because of their agricultural nature, not covered. The proviso has nothing to do with such elaborated enumeration of what theretofore was comprised within the term "agricultural labor" but excludes from the non-applicability of the statute all those activities where they are "only incidental to a principal occupation or occupations which would otherwise be termed covered." If the legislature had merely intended to more elaborately define "agricultural labor" without extending the scope of the act and reducing the scope of the exceptions, no exceptions or provisos would have been inserted. But it is clearly apparent that the legislature intended by this amendment to bring more activities within the purview of the unemployment insurance statute in keeping with the general statutory trend as heretofore recognized by this court in *Batt v. Unemployment Compensation Division*, 123 P. (2d) 1004, at 1008.

No one questions that appellant in its activities as a packer of meat and in the powers enumerated in its articles of incorporation would be covered. Likewise, it is conceded that its farming, stock raising, and feeding operations are agricultural in their nature. The question for determination is not whether these operations are agricultural, but whether they are "only incidental" to appellant's business as a packer. Appellant by its own articles of incorporation limited its activities and did not include stock raising or the feeding and fattening thereof.[2]

---

[2]"(a) The slaughtering of animals and packing of meats and manufacture of all kinds of slaughter house products.

"(b) The buying and selling of cattle, meat and all kinds of food materials.

The general rule that the inclusion of one excludes another, or, in other words, that the specific designation of certain definite things excludes all others, was early recognized and announced by this court and universally followed. (*Peck v. State*, 63 Ida. 375, 120 P. (2d) 820, at 822. See also 25 C.J. 220; 16 C.J.S. 61, sec. 21.)

Articles of incorporation restrict corporations to those activities incidental to its main purposes. In other words, the activities to be authorized, if not expressly mentioned and enumerated in the articles of incorporation, must be incidental. (19 C.J.S. 373,. sec. 945.) Also, general terms following particular words are limited to things of the same general kind as those first mentioned. (19 C.J.S. 381-2, sec. 948.) This rule as applied to corporations, confining their unenumerated activities to those *incidental* to its authorized business, has been specifically applied by our court, hence, it is unnecessary to go beyond the expressions of this court in determining that farming and stock raising operations under the statute, as now amended, if legitimately carried on by appellant, must be carried on only if incidental to those enumerated activities.

"The powers of a corporation, like its corporate existence, are derived from a grant by the state or other sovereign creating it, and *it has no powers except such as are expressly or impliedly conferred by its charter.* (14a C.J., p. 246, sec. 2075.)

"* * * The articles of incorporation of respondent company recite that the purposes for which it is formed are to own, acquire, hold, manage, control, operate and maintain

"(c) To deal in, manufacture and sell all classes of machinery and appliances.

"(d) To own and operate all kinds of water craft and landing facilities and appliances thereto pertaining.

"(e) To manufacture or store ice and to engage in refrigerating and general storage, either on private account or for the government and to act as public warehousers for all classes of goods and merchandise.

"(f) To acquire, own and sell real estate, goods, wares and merchandise of all kinds and also all other personal property necessary or convenient to carry out any of the purposes herein mentioned with authority to mortgage the same and to sell notes and bonds secured thereby."

a canal system, as well as to acquire the water rights taken up for the irrigation of the lands under said irrigation system, and to acquire other water rights in case the same may be deemed desirable, and generally to do any and all things necessary or proper to be done in conducting the business of supplying its stockholders with water for irrigation and domestic use and other useful and beneficial purposes." (*Sanderson v. Salmon River Canal Co.*, 45 Ida. 244, at 253-4, 263 P. 32.) [Emphasis ours.]

It will be noticed that the articles of incorporation here do not contain the last phrase in the above quotation, that is, "generally to do any and all things necessary"; hence, unless the farming and stock raising operations are incidental they are illegal because it is only *incidental* unenumerated powers which are permissible. See *Lewiston Orchards Irr. Dist. v. Gilmore*, 53 Ida. 377, at 381, 23 P. (2d) 720, where the court construed and applied the word "incidental." *It is not a matter of respondent's questioning the right of appellant to engage in the farming and stock raising operations, but appellant itself has, by assuming to undertake these activities, foreclosed itself from denying that these operations are incidental to its authorized business.* (*Rabbitt v. Union Indemnity Co.*, 140 Cal. App. 575, 35 P. (2d) 1066.) They are incidental because not mentioned but excluded. Other authorities in line with the rule above pronounced in *Sanderson v. Salmon River Canal Co.*, supra, that a corporation is limited to the activities expressly enumerated and those *incidental* are: *Moore v. Los Lugos Gold Mines*, 172 Wash. 570, 21 P. (2d) 253; *State v. Wheat Farming Co.*, 137 Kan. 697, 22 P. (2d) 1093; *Loveland & Co. v. Doernbecher Mfg. Co.*, 149 Ore. 58, 39 P. (2d) 668; *Oklahoma Wheat Pool Elevator Corp. v. Bouquot*, 180 Okl. 159, 68 P. (2d) 97.

Appellant urges that the following cases support its contention that its stock raising and feeding operations are, however, not incidental: *First National Bank of St. Louis v. State*, 68 L. ed. 486, 263 U.S. 640; *Nicolett National Bank v. Frisk-Turner Co.*, 71 Minn. 413, 74 N.W. 160; *People v. Chicago Gas Trust Co.*, 130 Ill. 268, 22 N.E. 798; *Hood v. New York*, 22 Conn. 1; *State v. So. Pacific*, 52 La. Ann. 249, 28 So. 372; *Western Maryland R. Co. v. Blue Ridge Hotel Co.*, 102 Md. 307, 62 A. 351. If we concede that such holdings are correct, it immediately leads appellant into the culdesac that if, following those authorities, its stock rais-

ing and feeding operations herein are not incidental, they are illegal because not sanctioned by its articles of incorporation, hence, appellant has no right to engage therein. If legal, they are incidental; if incidental, they come within the proviso, which leads inevitably to the conclusion, since the courts universally presume that acts are lawful and intended to be lawful by the perpetrator thereof, that appellant by its own contentions has established that these activities are incidental, and therefore it comes within the purview of the proviso. Appellant has thus established its own dilemma, upon one horn or the other of which it has empaled itself.

But appellant argues these operations are not "only incidental," that is, not confined to or subordinate to its main business, because only half of these products are consumed by it. However, the activity must be *only* incidental if it be otherwise prescribed by failure to be enumerated in the articles of incorporation. In other words, if the activity, in part, or in whole, is not so incidental as to be an adjunct of the main activities, it is not within the legitimate scope of those things which the state impliedly empowered the corporation to engage in by the filing of its articles of incorporation. The mere fact that the farming and stock raising activities are under separate management and in Idaho rather than in Washington still leaves all of these operations being performed by appellant itself; in other words, there has been no change of identity or entity.

"incidental. 1. Occurring in the course of or coming as a result or an adjunct of something else; concomitant; as, incidental expenses. 2. Happening or coming without regularity or design; foreign or subordinate to the general purpose; occasional; casual; accidental; as, an incidental remark; incidental variations; an incidental acquaintance." Funk & Wagnalls New Standard Dictionary.

"incidental. 1. Happening as a chance or undesigned feature of something else; casual; hence, not of prime concern; subordinate; as, an incidental expense. 2. Liable to happen or to follow as a chance feature or incident; as the trials incident to married life. 3. Met by chance; as, an incidental meeting. Rare." Webster's New International Dictionary, 2d ed.

From these and definitions in the following cases: *Burk v. Mead*, 159 Ind. 252, 64 N.E. 880; *State v. So.*

*Pacific,* supra; *Nicolett National Bank v. Frisk-Turner Co.,* supra; Durand's case, 124 Me. 59, 126 A. 164; *First National Bank of St. Louis v. State,* supra; *Hood v. New York,* supra; *People v. Chicago Gas Trust Co.,* supra; *Chandler & Chandler v. City of Shreveport, Louisiana,* 162 So. 437; In re Sickles, 156 N.Y.S. 864; *Western Maryland R. Co. v. Blue Ridge Hotel Co.,* supra; *Times Pub. Co. v. Stines,* 165 Okl. 300, 25 P. (2d) 791; *Peterson v. State Ind. Acc. Comm.,* 140 Ore. 326, 12 P. (2d) 564; *Biggart v. Lewis,* 183 Cal. 660, 192 P. 437, we glean that there are two common, essential, and distinguishing characteristics which define the word and give it form and substance, namely, the idea of subordination, that is, in a secondary or dependent position; and connection or relationship. In other words, there must be a bond which unites two activities; though the two activities may be entirely different, they nevertheless must pertain to and be part of a common end or aim, and certainly no one can deny that a packing plant cannot exist without livestock being raised and brought thereto, nor, on the other hand, would the livestock itself be of any avail, generally speaking, until it is prepared for human consumption. Now, it is true that the same individual or corporation need not engage in both activities, but one is a concomitant or correlative of and essential to the other. Therefore, either one is incidental to the other under the above definitions and the cases cited by both parties.

The order should be affirmed.

Holden, C.J., concurs in this dissent.