[Civ. No. 9472. First Appellate District, Division Two.—February 20, 1935.]

PHILIP WILLER, Appellant, v. WILLIAM J. QUINN, as Chief of Police, etc., et al., Respondents.

Morris Oppenheim and Leo R. Friedman for Appellant.

John J. O'Toole, City Attorney, and Sylvain Dewey Leipsic, Deputy City Attorney, for Respondents.

STURTEVANT, J.—The petitioner applied to the trial court for a writ of review. The respondents appeared and filed a general demurrer. The trial court sustained the de-

murrer without leave to amend. From the judgment entered the petitioner has appealed.

The material facts alleged in the petition include the following: The petitioner is and for some years has been engaged in conducting a second-hand store in which he buys and sells second-hand wearing apparel. He obtained a permit from the Police Commission of San Francisco to conduct said business and a license was issued to him by the tax collector. The respondent William J. Quinn is Chief of Police and Theodore J. Roche, Thomas E. Shumate and Frank J. Foran constitute the Police Commission of San Francisco. James C. Malloy is a lieutenant of police and George Stallard is an inspector. On September 9, 1933, petitioner purchased from V. Booth one suit of clothes and one leather jacket and paid therefor $7. At the time of the purchase '' . . . petitioner believed that the said V. Booth was the owner of and entitled to sell said property''. On January 26, 1914, the Police Commission adopted a resolution as follows:

"Resolved, that in all cases where a claim is made to property pawned with or sold to a Pawnbroker, Second Hand Dealer or Junk Dealer by a person claiming to be the owner thereof and asserting that the property was stolen, the validity of such claim shall be determined by the Chief of Police, or such other member of this department as shall be hereafter designated by this board. In the event said Chief or such other designated member shall determine that such property was stolen and that the claimant is the true owner thereof and that no collusion exists between such owner and the person or persons by whom such property was stolen, he shall direct that such stolen property be returned to the said owner without compensation of any kind being paid therefor. In the event such direction shall be refused, the permit under which such pawnbroker, second hand dealer or junk dealer is permitted to conduct his said business shall be subject to revocation;

"Further resolved, that no member of this department shall advise the payment by such owner of any compensation to such pawnbroker, second hand dealer or junk dealer for the return to him of any property claimed to have been stolen.''

On September 15, 1933, James C. Malloy and George Stallard directed the petitioner to turn over said property, without any compensation therefor, to Mr. and Mrs. Harold Winters, who then and there claimed to be the lawful owners, but petitioner refused to do so. On September 18, 1933, James C. Malloy filed with the Police Commission a formal complaint against the petitioner asking a revocation of petitioner's permit to conduct said business. The complaint so placed before the Police Commission was a formal statement of the facts showing a violation of said resolution by the petitioner. Upon the filing of the complaint the Police Commission issued a citation to the petitioner and in conformity therewith a hearing was had and the Police Commission entered an order revoking the permit of the petitioner to conduct a second-hand business. Thereafter petitioner appealed to the Board of Permit Appeals and after a hearing had the latter board affirmed the order of the Police Commission. No attack is made on the judgment of the Board of Permit Appeals and the members of that board are not parties to this proceeding. The contention made by the petitioner is ''That respondents above named were and each of them was without jurisdiction or authority to adopt or enact said resolution or to issue said citation, or to hear and determine the alleged charges set forth in said complaint so filed, as aforesaid, or to make the order revoking the permit of petitioner. . . . ''

Before 1932 the power to collect all licenses which might be required by law or ordinances within San Francisco was vested in the tax collector. (Art. IV, chap. V, sec. 2.) The power to issue permits was vested in the Police Commission. (Art. VIII, chap. IV, sec. 7.) The chief of police was the executive officer of the police department. The power to revoke a permit was not vested in any officer or board, but was governed by the general laws. In 1932 the present charter went into effect. It is not divided into articles and chapters but merely by sections. It is provided in section 24 that the board of supervisors may enact ordinances regulating the issuance of licenses and permits for the operation of business or privileges which affect crime and that the chief of police shall have the power to inspect the premises of second-hand dealers. Section 35 provides that the chief of police may refuse to issue a permit or may revoke it, if

already issued, as soon as it appears that the business is conducted in an "improper manner". Section 39 provides that if a permit is revoked the permittee may appeal to the Board of Permit Appeals which, after a full hearing, can concur in the act of revocation or restore the permit. It is not claimed the board of supervisors has enacted an unreasonable ordinance nor that the power to revoke in a proper case does not rest with *the chief of police*. But, as will presently appear, the attack is addressed solely to the resolution hereinabove set forth and to acts alleged to have been done under and pursuant to said resolution.

The first point involved is whether the petitioner had adopted the proper remedy. That point must be divided. He contends the Police Commission exceeded its jurisdiction in passing the resolution. But he is mistaken. In adopting said resolution the Police Commission was exercising legislative functions and was not exercising judicial functions and such acts may not be inquired into in this proceeding. (*Wulzen* v. *Board of Supervisors*, 101 Cal. 15, 24 [35 Pac. 353, 40 Am. St. Rep. 17]; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 132, 139.) It is also contended that the Police Commission did not have jurisdiction to hear the complaint filed with the Commission, to issue the citation, nor to make the order revoking petitioner's permit because the above quoted resolution was unconstitutional. As will appear below we think the resolution was not unconstitutional or void.

In his next point the petitioner claims his constitutional rights have been infringed. This point he predicates upon the contention that the said resolution purports to confer the power on the Police Commission to hear and determine the title to certain personal property, without notice to the claimants. The point may not be sustained. It will be conceded that the wording of the resolution is such that the petitioner's argument has some plausibility if one picks out merely some of the words contained in the resolution. But that method of construing a written instrument is never permissible. In so far as the Police Commission attempted to provide a rule to govern its members in enforcing the police powers it will be presumed it acted within the law. (Code Civ. Proc., sec. 1963, subd. 15.) The entire resolution will be read as a whole and force and effect will

be given to every word if possible. (Code Civ. Proc., secs. 1858 and 1859.) As so read it is clear that said resolution does not purport to confer the power to adjudicate title. In the petition it is not claimed that the Police Commission or any other tribunal or officer has attempted to adjudicate title to the personal property involved. When one, claiming to be the owner of property in the possession of a second-hand dealer, asserts his ownership and states that it has been stolen from him, the resolution under attack prescribes a procedure which, if followed, will tend to preserve peace and order and will relegate the contending parties to the courts to try the title to the property and will place the burden where it belongs, to wit, on him who asserts a claim thereto as against the person who makes a *bona fide* claim to clear title but asserts that the property was stolen from him. If, in any jurisdiction, a peace officer finds two persons engaged in a fist fight, his first duty is to stop the fight. If it transpires they were fighting over the title to personal property, he makes certain inquiries and thereupon he turns the property over to the apparent owner and directs the other party, if he is dissatisfied, to go into court and obtain a judgment determining the title. The resolution or rule complained of was but a formal direction enforcing just that procedure—no more, no less.　Moreover, the petitioner has been awarded more consideration than under the law he was entitled to. When officers Malloy and Stallard made their report to the chief of police, the latter had the clear right under the provisions of section 35, *supra,* to revoke the permit held by the petitioner who, under section 39, had the right to appeal to the Board of Permit Appeals. If he lost his appeal he was bound to show in an application for a writ of review that the latter board had exceeded its jurisdiction or he could not prevail. He had no right of appeal to any court because the charter does not so provide. If he was successful in his appeal, the Board of Permit Appeals had the power to restore his permit (sec. 39, *supra*) and he was not bound to go to the Police Commission because the charter does not so provide.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1935.