[Civ. No. 12719. First Dist., Div. One. Nov. 24, 1944.]

CHAS. A. GREIF et al., Petitioners and Respondents, v. CHARLES W. DULLEA, as Chief of Police, etc. et al., Respondents; YELLOW AND CHECKER CAB COMPANY (a Corporation), Appellant.

ANTHONY CANCILLA et al., Petitioners and Respondents, v. CHARLES W. DULLEA, as Chief of Police, etc. et al., Respondents; YELLOW AND CHECKER CAB COMPANY (a Corporation), Appellant.

Lloyd S. Ackerman and Philip S. Mathews for Appellant.

Clayton W. Horn, Elmer P. Delany and James A. Himmel for Petitioners and Respondents.

WARD, J.—An appeal by the Yellow and Checker Cab Co. in a certiorari and mandamus proceeding from the denial of its motion to vacate the judgment or judgments entered in certain cases consolidated for trial. The motion was based upon the ground that the above named company, although it was not a party of record in the proceedings before the trial

court, was the real party in interest; that the findings of fact are not supported by the evidence and that the conclusions of law are erroneous.

The main question involved is whether the above appellant has the right to operate in the city and county of San Francisco approximately 500 taxicabs or only about 375. On appeal it is urged, in addition, that the trial court failed to review the action of an appeal board created under the provisions of a local charter, but tried the cause de novo, thus ignoring the function and authority of the local board.

In advance of an investigation of all other legal and factual problems the question of the right of the Yellow and Checker Cab Co. to take this appeal should be determined. Briefly, and only for the determination of this point, the following facts appear: In 1935 appellant cab company requested the Board of Police Commissioners to "cancel" temporarily its right to operate 125 of its taxicabs. The board made an order purporting to *revoke* that right. In 1941 the company requested the chief of police to restore such right on the ground that the Board of Police Commissioners did not have the power to suspend indefinitely and could not revoke a permit, license or certificate without notice and hearing. The chief of police recognized the right of appellant to operate 500 taxicabs and under the provisions of ordinance 5132 NS, section 54 (Municipal Code, part III, Art. 2, § 128; p. 691) notified the tax collector that five hundred instead of three hundred seventy-five was the number of taxicabs appellant was entitled to operate. Upon receipt of this notification the tax collector addressed himself to the city attorney for an opinion as to whether the company was liable for the tax on 500 or 375 vehicles. The city attorney advised collection of the tax on the lesser number for the past year, and on the greater thereafter. This was done and the company given the right to accommodate an increased number of passengers by the use of 125 additional taxicabs.

Anthony Cancilla and others, members of the Chauffeurs' Union, local 265 A. F. of L., and Charles A. Greif and others, individually and as directors of a competing taxicab company, whom we shall refer to hereafter as petitioners, appealed to the Board of Permit Appeals, a body created to hear appeals by any department or person claiming his personal property or interests, or those of the general public, have been

adversely affected as the result of the granting or revoking of permits or licenses by a department or its representative. (San Francisco Charter, § 39, Stats. 1931, p. 3001.) The Board of Permit Appeals approved the action of the chief of police. The chauffeurs' union and one taxicab operator filed a petition in the superior court for a writ of mandamus directed solely to the chief of police, praying for an order to cancel the 125 "permits" on the ground that they were issued illegally. On the same day petitioner Charles A. Greif filed a petition for a writ of mandamus and a writ of certiorari to be directed to the police commission and the chief of police. Alternative writs were issued as prayed. Answers and returns were filed by the respective parties. A stipulation of facts was entered into, signed by all of the attorneys of record and the attorneys for the appellant, though as stated the latter was not a party of record. In addition to this stipulation, testimony and documentary evidence were received. The attorney for the appellant prepared the pleadings and stipulation, conducted the trial, argued legal questions and, as appears from the record, seems to have been given full control in the conduct of the case. At the conclusion of the trial, judgment was rendered in favor of the chauffeurs' union and the competing company, and against the parties named as respondents in the superior court proceedings. This, of course, did not include the appellant.

The Board of Permit Appeals, which had been made respondent in the superior court proceedings shortly before submission for decision, the police commission and the chief of police declined to appeal. The appellant herein had waged the battle on its own behalf and on behalf of the chief of police and others, and was suddenly left without right to challenge the correctness of the trial court's decision.

In this position the appellant presented a motion to vacate the judgment, upon the ground that an indispensable party had not been joined. The motion was denied and the Yellow Cab Company appealed.

In *Elliott* v. *Superior Court,* 144 Cal. 501, 507, 509 [77 P. 1109, 103 Am.St.Rep. 102], the court said: "But it has been settled as a rule of practice by a long series of decisions that only a *party to the record* can appeal, and other rules of practice equally well settled have remedied any inconvenience that might have resulted from this construction of section 938,

so that there is no reason now to depart from it, if there ever was." "There is in fact another plain, speedy, and adequate remedy allowed by our practice to one whose rights or interests are injuriously affected by the judgment or by any appealable order of a court given or made in an action or proceeding to which he is not a party. He may make himself a party by moving to set aside such judgment or order, and if his motion is denied may, on appeal from that order, have the proceeding of which he complains reviewed not only for excess of jurisdiction but for error. (*People* v. *Grant*, 45 Cal. 97; *Green* v. *Hebbard*, 95 Cal. 39 [30 P. 202]; *Pignaz* v. *Burnett*, 119 Cal. 157 [51 P. 48]; *Credits Com. Co.* v. *Superior Court*, 140 Cal. 82 [73 P. 1009].)" (See, also, *Eggert* v. *Pacific States S. & L. Co.*, 20 Cal.2d 199 [124 P.2d 815]; *Faias* v. *Superior Court*, 133 Cal. App. 525 [24 P.2d 567].) Thus, on appeal from the court's order denying the Yellow Cab Company's motion to vacate, if it appears that the motion should have been granted, an appellate court may not only decide the question of the propriety of the order, but may review for error the proceedings before the superior court and the local board.

The competing company and the union do not object to the consideration of the entire appeal, if the appellant is entitled to appeal. It is their position that the appellant is not an indispensable party; that by conducting the trial before the superior court the company had its day in court, and that by moving to set aside the judgment not only for lack of jurisdiction but on the ground that the conclusions of law and findings of fact were erroneous, the company entered a voluntary appearance and thereby waived the failure to join the company as a party in the superior court. The last contention relies principally upon the facts and the law as set forth in *Shelley* v. *Casa De Oro, Ltd.*, 133 Cal.App. 720 [24 P.2d 900]. In that case the motion to vacate and set aside the judgment was made (pp. 721-722) "upon the ground that no summons had been served upon it, that no appearance had been made by it or by anyone authorized by it to appear, and that the purported appearance by the attorney referred to was entirely without its authorization and without its knowledge or consent." At page 723, the court said: "It seems to be settled in this state that the inclusion in the motion of any ground inconsistent with the sole claim that the judgment is entirely void for want of jurisdiction of the person is sufficient to convert the attempted special appearance into a general appearance." In the present

case the motion was enlarged to contain incidentally an attack upon the findings, but the basis of the motion was lack of jurisdiction. If a judgment should not have been entered at all, it may be set aside under proper circumstances *(Lynch* v. *Bencini,* 17 Cal.2d 521 [110 P.2d 662]), for instance, if the party was an indispensable party, as distinguished from a merely necessary party. Parties having no interest in an action are not aggrieved parties, and hence may not appeal under the provisions of Code of Civil Procedure, section 938. A party in interest, but not of record, who accepts complete control in the conduct of a case, but suddenly is confronted with his lack of legal capacity to take an appeal, is an aggrieved party. The appeal herein was from a special order made after final judgment. (Code Civ. Proc., § 963, subd. 2.) The company was not a party to the proceedings in the superior court, except as indicated heretofore, and may resort to an appeal from the order refusing to vacate the judgment. *(Luckenbach* v. *Laer,* 190 Cal. 395 [212 P. 918]; *Title Ins. & Trust Co.* v. *California etc. Co.,* 159 Cal. 484 [114 P. 838].) The right of appeal should be recognized unless the statute provides otherwise, and it should not be denied upon technical grounds if the appellant is acting in good faith. *(Sharick* v. *Galloway,* 12 Cal.App.2d 733 [55 P.2d 1196]; *Pratt* v. *Robert S. Odell & Co.,* 49 Cal.App.2d 550 [122 P.2d 684].)

As we view the question of the right of appeal, the important consideration is whether the appellant was an indispensable party. "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in. . . ." (Code Civ. Proc., § 389.) The terms "necessary party" and "indispensable party" have often been used synonymously. Usually, a necessary party is made a defendant in an action though his interest may be separate from that of others. A necessary party may be eliminated if under certain circumstances his presence cannot be obtained and his interest will not thereby be impaired, but if the plaintiff or petitioner prays for the cancellation of a legal right in a certificate, permit or license issued in the name of and being the property of a third person, such person

is an indispensable party to the action. In *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 522 [106 P.2d 879], it was said: "Where, also, the plaintiff seeks some other type of affirmative relief which, if granted, would injure or affect the interests of a third person not joined, that third person is an indispensable party." (See, also, *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 [73 P.2d 1163]; *Mitau* v. *Roddan,* 149 Cal. 1 [84 P. 145, 6 L.R.A.N.S. 275]; *McPherson* v. *Parker,* 30 Cal. 455 [89 Am.Dec. 129]; *Ambassador Petroleum Co.* v. *Superior Court,* 208 Cal. 667 [284 P. 445]; *O'Connor* v. *Irvine,* 74 Cal. 435 [16 P. 236]; *Ash* v. *Superior Court,* 33 Cal.App. 800 [166 P. 841]; *Los Angeles County* v. *Superior Court,* 17 Cal.2d 707 [112 P.2d 10]; *First Nat. etc. Bk.* v. *Superior Court,* 19 Cal.2d 409 [121 P.2d 729]; *Bayle-Lacoste & Co.* v. *Superior Court,* 46 Cal.App.2d 636 [116 P.2d 458].)

In the present case the action of the Board of Police Commissioners in "cancelling" the "permits" purports to be the annulment of license rights of the company to operate taxicabs. The communication from the chief of police to the tax collector designating 125 additional taxicabs as taxable also referred to property of the Yellow Cab Company. The petitions of the chauffeurs' union and the competing company to the Board of Permit Appeals specifically mentioned that concern. It was plain therefrom that the license rights and the property involved were those claimed by the Yellow Cab Company. The union's and the competitor's petitions filed in the superior court, whether for a writ of certiorari or mandamus, alleged that the Yellow Cab Company and a subsidiary company "held permits from the Police Department of the City and County of San Francisco to operate five hundred (500) cabs." This figure included the 125 in dispute in this proceeding.

Irrespective of whether the Yellow Cab Company had a valid right to operate the 125 taxicabs and was obligated to pay taxes thereupon, the company was entitled to appear as a party in the superior court proceeding and defend its legal right. The petitioners in the superior court prayed that the validation of the licenses or permits be annulled, voided and set aside, and that the licenses or permits be cancelled. This was indeed asking for a decree, which, if granted, would injure a third party not joined as a party. (Code Civ. Proc., § 1107.) (See *Bank of California* v. *Superior Court, supra.)*

It seems unnecessary to consider this point further. In view of its inability to appeal from the judgment, the Yellow Cab Company must be declared to be an indispensable party to the proceeding. ▪ An indispensable party is not bound by a judgment in an action in which he was not joined. *(Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892]. Restatement of the Law, Judgments, § 93 ; I Greenleaf on Evidence, 16th ed., § 523 ; 30 Am. Jur., Judgments, §§ 219-246.)

▪ The union and the competing company further contend that the conduct of the case by the appellant Yellow Cab Company constituted that company's day in court, and it thereby waived any objection to jurisdiction. It may be admitted for the purpose of considering the contention that from the date of the trial to the date of the judgment the appellant had its "day in court." In *Harris* v. *Barker,* 80 Utah 21 [12 P.2d 577], the petitioner in a mandamus proceeding failed to join the real party in interest. The party appeared and participated in the proceeding to the same extent as if a party of record. It was held that under such circumstances the proceedings should not be set aside merely because one who had actually participated in the trial had not been made a party in form. (See, also, *Louisville & Nashville R. R. Co.* v. *Schmidt,* 177 U.S. 230 [20 S.Ct. 620, 44 L.Ed. 747].) This is the generally accepted rule and is formulated in Restatement of the Law, Judgments, section 84, pp. 390, 398 as follows: "A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound. . . . In order that the rule stated in this Section should apply it is necessary that the one in whose favor or against whom the rules of res judicata operate participate in the control of the action and if judgment is adverse, *be able to determine whether or not an appeal should be taken."*

▪ As previously noted herein, the Yellow Cab Company was refused permission by the representative of the chief of police, the Police Commission and the Board of Permit Appeals to appeal on its behalf. In a word, the Yellow Cab Company was no longer able to protect its rights by the

process of appeal. Accordingly, the rule set forth in *Elliott* v. *Superior Court, supra,* and other cited cases is applicable to the present appellant injuriously affected by the judgment. Its right of appeal extends to error throughout the superior court proceedings. As stipulated on oral argument, all of the claims of the respective parties will be considered on this appeal.

It is admitted in petitioners' brief that on February 16, 1931, appellant cab company was the "owner and holder of 500 permits for the operation of taxicabs." The record shows that from 1931 until 1935 it paid license taxes for 500 cabs although it operated only 375. In the latter part of 1935 a subsidiary of appellant addressed a communication to the Board of Police Commissioners, stating that the subsidiary held permits to operate 195 taxicabs; that it did not require that number and therefore requested the board "to cancel 125 permits." It asked, however, that in the event "additional facilities" should be required in the future the "permits" be reinstated. The above letter accompanied a communication to the board written on the letterhead of the appellant and signed by W. Lansing Rothschild, the president of the company. The letter reads in part: "With reference to the attached letter of our wholly owned subsidiary, dated December 12th, you will observe we are voluntarily surrendering 125 taxicab operation permits of the Yellow Cab system.

"We are extremely reluctant to believe that our business will not undergo a complete and satisfactory recovery, and in connection therewith we respectfully request that your Board consider this cancellation as of a temporary nature, more or less as an indefinite suspension of these permits, as it is our belief that ultimately we will again enjoy sufficient operation to require their restoration to ourselves." A few days later the Board of Police Commissioners passed the following resolution: "RESOLVED, that the following number of certificates of Public Convenience & Necessity and permits as Operators of Public Vehicles, be and they are hereby cancelled at the request of the permittee. . . . Red Top Cab Co., 125 permits." On the following day there was endorsed on the reverse side of the letter of the subsidiary company to the Board of Police Commissioners, filed as an exhibit, the following: "RED TOP CAB CO. 125 Permits Cancelled. GRANTED BY THE . . . CHIEF OF POLICE WM. J.

QUINN.'' The two letters requested a ''cancellation as of a temporary nature'' only—a ''suspension''—subject to ''reinstatement'' and, as interpreted later by Chief Dullea, this was ''granted'' by Chief Quinn.

In July of 1941 the opinion in *Flynn* v. *San Francisco,* 18 Cal.2d 210 [115 P.2d 3] was filed. That case, involving San Francisco ordinance No. 5132 NS, the identical license ordinance involved herein, held that the ordinance violated the state Constitution (art. XIII, § 1) and that it was double taxation of property, which is not permitted within the terms of Political Code, section 3607. Shortly thereafter the city attorney herein determined that a license to operate taxicabs applied to those in operation and not to those not being operated. This interpretation was made pursuant to the decision in the Flynn case. Thereupon appellant company filed a petition to correct the records, and a second petition to restore 125 permits ''temporarily suspended.'' The present chief of police, Dullea, decided in favor of appellant. The union and the competing company petitioned the Board of Permit Appeals to hear and determine the propriety of the action of the chief of police. To avoid repetition of this question, the propriety or validity of the action of the chief of police will be determined after consideration of the same facts and circumstances as presented to the Board of Permit Appeals. However, it seems advisable to determine first the question of jurisdiction of the Board of Permit Appeals to hear the petitioners' appeals.

Petitioners contend that the Board of Permit Appeals is merely an administrative board without quasi judicial functions. Section 39, *supra,* of the charter provides: ''Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board

may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused.''

The Board of Permit Appeals originates from the vote of the people of the county, followed by approval of the local charter by the state. It does not possess the identical character of jurisdiction of a municipal or justices court. It has jurisdiction to hear appeals and confine the hearing to the evidence submitted by the respective parties, or it may make ''such further investigation as the board may deem necessary.'' (Section 39 of the charter.) It may be a hybrid tribunal (see *Tipp* v. *District of Columbia,* 102 F.2d 264), but its jurisdiction over designated matters is broad. It may hear appeals upon the record; it may try the cause de novo or it may make its own investigation and its own independent order based thereon. It should be noted that in the present appeal it did not make an independent order.

The Board of Permit Appeals of the City and County of San Francisco may take notice of the existence and contents of permit and license ordinances as part of its function to review the acts of departments authorized to issue, grant or deny licenses or permits. *(Ex parte Davis,* 115 Cal. 445 [47 P. 258] ; *Ex parte Hansen,* 158 Cal. 494 [111 P. 528].)

Although a superior court may not take judicial notice of ordinances unless pleaded and proven, and an appellate court is ordinarily confined to the record on appeal (10 Cal. Jur., § 31, pp. 705-707), yet an appellate court may take judicial notice of an ordinance of which an inferior tribunal of original jurisdiction may properly take notice. *(Varcoe* v. *Lee,* 180 Cal. 338 [181 P. 223] ; *Tipp* v. *District of Columbia, supra.)* In the present case the parties stipulated that this court should consider all ordinances referred to in the superior court or before the Board of Permit Appeals.

The status of the San Francisco Board of Permit Appeals has been established. In *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303 [144 P.2d 4], an original proceeding in mandamus to compel the board to cancel its action in overruling the issuance of certain permits and to reinstate the permits and affirm the action of another board, the court held (p. 310): ''. . . that the remedy of mandate is not available

to control the exercise of official discretion or judgment, or to alter or review action taken in the proper exercise of such discretion or judgment." The opinion (p. 311) states: "This comprehensive language affecting the issuance of *all* permits sought under authority of the relevant San Francisco Charter and ordinance provisions in plain terms vests the granting power with a 'sound discretion' generally." The opinion then considered the plan of appeal from departmental agencies. At page 313 it was further said: "Section 39 of the San Francisco Charter creates the Board of Permit Appeals as the reviewing agency here concerned and defines its powers, duties and jurisdiction." It was then held that the claim that the Board of Permit Appeals was confined to a determination of whether there had been a compliance with municipal ordinances regulating permit procedure was untenable.

Under the authority of the Lindell case it must be held that, consistent with the purpose of the charter, the Board of Permit Appeals was duly authorized to hear the appeal and to use its discretion in determining the judgment or order of the board.

We therefore return to a consideration of the facts as presented by documents and testimony. Before the board these consisted of the communications and statements heretofore mentioned, numerous ordinances, certain sections of the municipal code, charter provisions, testimony by the president of the Board of Police Commissioners, the chief of police, the deputy chief clerk in the tax collector's office and the business representative of the chauffeurs' union, 265, A. F. of L. All of the witnesses were called by the petitioners. Attention is not called to any claimed untruth or contradictory or inconsistent statements made by any of them. Neither is it claimed that the police commission nor the chief of police nor the municipality received any unjust enrichment by the surrender of the rights to operate the 125 taxicabs or the restoration thereof. The position of the petitioners is that in 1935 there was a voluntary surrender and cancellation of 125 permits which was accepted by the police commissioners, together with a cancellation by the then chief of police; in a word, that having surrendered the designated rights the chief of police erred in any action resulting in restoration. It will hereinafter appear that if the action of the chief of police, approved by the Board of Permit Appeals, constituted in fact the issuance

of new rights in the form of a permit or permits or licenses, under the provisions of ordinance 11.01111 (Municipal Code, p. 498, §§ 1075, et seq.) it would be necessary to obtain from the Board of Police Commissioners a declaration that necessity and public convenience demanded the operation of the 125 taxicabs. If from all the facts and circumstances the Board of Permit Appeals was justified in determining that the action of Chief Dullea was not equivalent to the issuance of new rights but merely the recognition of old rights which in fact had never been *revoked,* then the provision of ordinance 11.01111 in reference to a resolution of public convenience and necessity is not applicable to the situation presented.

The use of the word "permit" in the record and in the briefs may appear to be confusing. Petitioners seem to use the word as authority to operate *one* taxicab. The police department sometimes uses the word in the same sense. There were not 125 separate permits. The fact is appellant had one permit to operate 500 taxicabs. So we proceed for the present to the period during which Chief Dullea directed the police department, including the issuance of permits to operate passenger vehicles for hire.

Upon receipt of the communication from appellant in 1941, Chief Dullea conferred with a lieutenant attached to the traffic department, the deputy chief of police and a member of the Police Commission. He then wrote his determination of the question somewhat in the form of rough court findings and made them part of the files of the department. He determined that the permit issued in June 1932, after a hearing, by the then chief of police and the Board of Police Commissioners was in fact a single permit to operate 500 taxicabs by several companies bearing different names; that since the issuance of the permit the parent company had regularly licensed motor vehicles for hire in number reasonably necessary to meet the public demand; that from the record the former chief "apparently consented to the request of the company for an indefinite or temporary suspension," whereas the Police Commission had attempted to withdraw from the operation of such permit without notice, hearing or trial, 125 taxicabs; that the company now desires to operate the full number (500) of vehicles covered by said permit. The chief concluded that there was no law authorizing the action of the department in 1935, and declared the permit to operate 500 taxicabs to be in full force and effect. Thereafter he notified the tax collec-

tor that the subject of penalties and delinquencies was one for consideration by the tax collector but that the appellant cab company was entitled to operate 503 taxicabs. The extra three do not play any part in the present proceeding.

As previously stated, petitioners appealed to the Board of Permit Appeals.. In turn the board upheld the chief. As previously stated, the Police Commission in 1935 was without legal authority to cancel or revoke any permits. This power belonged to the chief. There remains for consideration on this question the action of the chief in that year in purporting to "cancel" the "permits" or, as petitioners sometimes refer to them, the franchise. It may be admitted that a "permit" is somewhat of the nature of a franchise, but we think that is not the case here. In no place called to our attention in the charter or in the ordinance is this license or permit referred to as a franchise. We are not called upon to pass upon the question whether the right to operate a vehicle in *all* parts of the city and county of San Francisco without restriction as to roadway or street, may be correctly designated as a franchise. There is nothing in the record indicating that any legislative body, supervisors or municipal charter has conferred upon the Police Commission power to grant a franchise. The powers of the Police Commission are outlined in section 35 of the San Francisco Charter. That section does not contemplate the issuance of a franchise, but a permit, such permit to be issued by the chief of police—not the Police Commission. However this may be, the more important question is whether the permit was cancelled.

The idea generally conveyed by the term "cancellation," as applied to a privilege or authorization evidenced by a writing, is that the authorization or privelege has been withdrawn or terminated. The word "cancel" has sometimes been used instead of repeal, annul, rescind, terminate, surrender, waive or abandon. (Words and Phrases (perm. ed.), vol. 6, p. 33 et seq.; *Pearson* v. *Brown*, 27 Cal.App. 125 [148 P. 956].) A request to cancel or destroy a thing is of no avail unless there is something that can be in fact cancelled or destroyed. In this instance the reading of the context of the letters in question is persuasive that the idea in mind was not abandonment, but suspension with subsequent restoration. The use of the word "cancel" was ill advised and unfortunate in that it has afforded ostensible ground for this litigation.

Petitioners contend that there was in fact cancellation. If so, there must have been abandonment. There can be no abandonment if there is any intention to repossess or reclaim. (*Richardson* v. *McNulty,* 24 Cal. 339; *Del Giorgio* v. *Powers,* 27 Cal.App.2d 668 [81 P.2d 1006]; *Humboldt County* v. *Van Duzer,* 48 Cal.App. 640 [192 P. 192].) In the present case the intent of appellant is manifest from the words used in the communication to the Board of Police Commissioners as follows: " . . . we respectfully request that your Board consider this cancellation as of a temporary nature, more or less as an indefinite suspension of these permits." In the other letter it is plainly set forth that should the company require additional facilities in the future they desired their rights restored. The record shows that in 1935 the company did not need the 125 taxicabs on account of the depression; it also indicates that in 1941 within a week after the Japanese attack on Pearl Harbor, San Francisco needed more taxicabs. The weakness of petitioners' position rests upon the theory that the permit issued in 1941 by Chief Dullea was new and not a mere revival. If true, it would have been necessary that the Police Commission issue declarations of public convenience and necessity (ordinance 11.01111) covering such action, which was not done. Dullea did not issue new permits but declared and notified the tax collector that "the permit held by the company for 500 taxicabs has been, ever since June 13, 1932, when it was issued, and still is, in full force and effect." Under the circumstances a certificate of public necessity and convenience was not necessary. There is substantial factual evidence to sustain this conclusion by the Board of Permit Appeals. We will now give more minute consideration to the legal effect of ordinances, etc., as justifying the action of Chief Dullea.

For many years the Yellow Cab Company, under changing rules, by ordinance held a permit for the operation of 500 taxicabs, and at times it operated that number. No ordinance called to our attention annulled this privilege. On the contrary, all new ordinances reserved such right to the company. In August, 1931, ordinance 9045 NS was adopted, which provided that before a license or permit should be issued to the operator of a vehicle for transportation of passengers for hire the board of supervisors should declare by resolution that public convenience and necessity required such service. No declaration of public convenience was required of the old

licensees or permittees. (§ 1(a) and (b).) By the terms of the same ordinance the existing permits and licenses were recognized as remaining in force.

In February, 1932, the present city charter became effective, and it divested the board of supervisors of the power to declare the existence of public convenience and necessity to operate vehicles for hire. A new ordinance was adopted, which vested such power in the Police Commissioners. The new ordinance, like the old, provided that a declaration of public convenience and necessity was not required if the applicant was then engaged in the operation of motor vehicles for passenger service for hire. (§ 1(a).)

On June 13, 1932, a formal permit was issued to the Yellow and Checker Cab Co. to operate under its own and under fictitious names 500 taxicabs. The result of this action was a clarification, if any doubt existed that appellant held one permit for the operation of 500 taxicabs.

The license tax ordinance (5132 NS, Municipal Code, part III, art. 2) was construed by appellant and others to require a taxicab permittee to pay a license tax on each taxicab, varying in amount according to its seating capacity, and whether the cab was in operation or not. The tax collector was authorized to issue drivers' annual identification cards upon the presentation of drivers' annual permits.

Ordinance 11.01111 enacted in February, 1932, was still in effect in 1935. It provided that the Police Commission should under certain circumstances direct the police department to revoke a license or permit. (§ 5.) An ordinance was passed requiring the chief of police in writing to submit to the tax collector data showing the number of permits outstanding and the amount collectible depending upon the seating capacity of each taxicab, etc. (San Francisco Municipal Code, part III, § 128, p. 691.)

There is evidence that a lieutenant of police under direction of the chief of police in the month of December of each year, in pursuance of the provisions of the ordinance, supplied the required information to the tax collector. The chief of police notified the tax collector near the end of 1940 that for the calendar year 1941 the Yellow Cab Company was entitled to an additional 125 licenses. The city attorney advised the tax collector to collect for the year 1941, taking into consideration such addition, but not for past years, nor penalties for nonpayment in past years.

It seems necessary to repeat that in 1935 the Police Commission was not authorized to "cancel" permits. Under the provisions of ordinance 11.01111 it was given power to pass resolutions of necessity and convenience and to grant permits and purportedly to revoke them. However, in 1935 ordinance 3.04121 was in effect. That ordinance provides that permits for "the operation of vehicles for hire" shall be issued by the "Police Department." Sections 24 and 26 of part III of the San Francisco Municipal Code respectively provide: "Any department may revoke any permit subject to issuance by said department when it shall appear that the business or calling of the person, firm or corporation to whom it was granted is conducted in a disorderly, improper or hazardous manner, or that the place in which the business is conducted or maintained is not a proper or suitable place in which to conduct or maintain such business or calling." ". . . and in granting or denying said permit, or revoking or refusing to revoke a permit, [the department] may exercise its sound discretion as to whether said permit should be granted, transferred, denied or revoked." Under section 25 the Police Commission acts in an advisory capacity to the chief of police in the matter of permits. The Police Commission may pass a resolution of convenience and necessity but the chief of police is empowered to issue and revoke licenses.

The chief's authority is also found in the charter. Under the provisions of the charter the board of supervisors was made a legislative body exclusively, and required thereby to designate the "department" which should issue and revoke permits and licenses. The chief administrative officer of each appointive department is head of such department, responsible for its conduct to a board or commission or to the chief administrative officer of the city and county. (Charter, § 20, Stats. 1931, ch. 56, pp. 2973, 2989.) Relative to the conduct of affairs a board or commission must deal with "its chief executive officer." (Charter, § 22.) That the chief of police as the head of the police department had the power to issue and revoke permits and licenses is shown by charter section 35, at page 2998, which, in part reads: "The chief of police may refuse to issue any permit that is subject to police department investigation and issuance, if it shall appear that the character of the business or the applicant requesting such permit does not warrant the issuance thereof, or he may revoke any such permit as soon as it shall appear that the busi-

ness or calling of the person to whom it was granted is conducted in a disorderly or improper manner, or that the place in which the business is conducted or maintained is not a proper or suitable place in which to conduct or maintain such business or calling." He could, however, revoke only for good cause as set forth in section 35.

In 1935 not only the commission but the chief acted upon the application of appellant relative to the 125 taxicab rights. On the back of the communication in 1935 the then chief wrote, as stated: "Red Top Cab Co., 125 Permits cancelled." etc. If it be assumed that he intended to cancel "125 Permits," his action was technically incorrect. There was only one permit. If he intended to cancel the right to the licensing of 125 taxicabs, he was likewise technically incorrect. There was no provision by statute or ordinance to "cancel" the licenses.

There was no conflict in the facts presented to the Board of Permit Appeals. Neither the chief nor the Board of Permit Appeals was called upon to interpret provisions of the charter or ordinances in the same manner as the supreme or a lower court of record. The board is always able to obtain advice from the city attorney. The actions of the board and its power should not be "hedged about with subtle technicalities so as to hamper" the fair disposition of an appeal. (*Lindell Co.* v. *Board of Permit Appeals, supra,* p. 319.)

The real issue was a factual question: Was there a cancellation of the permits by abandonment? Abandonment, even if the permit should be deemed to be a franchise, is determined by intent. The circumstances of lapse of time and mistake of law may be considered in determining intent. (*People* v. *Southern Pacific Co.,* 172 Cal. 692 [158 P. 177]; *Watson* v. *Heger,* 48 Cal.App.2d 417 [120 P.2d 153].) There is a mistake of law appearing in the record, a mistake evidently made by county officials and the Yellow Cab and other companies, namely, the exaction and payment of taxes that should not have been paid. (See *Flynn* v. *San Francisco, supra.*) It may not be assumed that appellant knowingly intended to surrender rights in respect of which, had the opinion in the Flynn case been rendered at that time, it would have been apparent that no action on the part of the commission or the chief was required canceling or accepting surrender of the right to operate any of the 500 taxicabs. (*White* v. *Stevenson,* 144 Cal. 104 [77 P. 828].)

Before passing to the final question presented by appellants, it may be well to once more refer to petitioners' contention that the Board of Permit Appeals does not possess judicial power. The distinction between state and local boards is recognized in *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425]. It must be remembered that here we are not dealing with a statewide but a local board. In *Walker* v. *City of San Gabriel,* 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383], it is said: "Either certiorari or mandamus is an appropriate remedy to test the proper exercise of discretion vested in a local board." Among the decisions cited in support thereof we find *Dierssen* v. *Civil Service Commission,* 43 Cal. App.2d 53 [110 P.2d 513] and *Naughton* v. *Retirement Board of S. F.,* 43 Cal.App.2d 254 [110 P.2d 714].

The San Francisco Board of Permit Appeals is a local board and comes within the classification of a board with discretionary powers. The San Francisco Charter directly confers such powers upon this particular board. (Charter, § 39.) Ordinance 3.0411, section 13 (Municipal Code, pt. III, art. 1, § 26, p. 673) directs the use of discretion in granting or denying any permit. The Supreme Court of this state has declared it to be a board that was not only permitted, but directed, to use "sound discretion." (*Lindell Co.* v. *Board of Permit Appeals, supra.*) In that case, at page 314 the court said: ". . . the charter clearly contemplates a *full* hearing of the case brought before the Board of Permit Appeals, where after considering the matter on its merits as presented by the applicant, the 'head or representative of the department' in vindication of the result reached at the initial hearing, and the interested parties therein, said Board is authorized to make *final* disposition of the application for the permit. In view of such elaborate provision for the hearing on appeal it cannot be argued that the designated appellate board—the Board of Permit Appeals—was in any way limited or restricted in its consideration of the instant case, in the light of the disputed issues of fact." (Second italics added.)

In *Dierssen* v. *Civil Service Commission, supra,* this court held that judicial or quasi judicial power may be conferred on a local board. At pp. 59-60, it was stated: "The question as to whether by charter provision local boards, such as a civil service commission, may be invested with judicial fact-finding powers seems never to have been seriously questioned in this state. The books are full of cases expressly or impliedly

holding that where fact-finding powers have been conferred on local boards their determination will not be set aside unless an abuse of discretion is pleaded and proved, that is, unless it be alleged and proved that the board acted arbitrarily, capriciously or fraudulently. [Citing cases.] It is true that in *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119], and *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848], and other recent cases, it has been held that statewide administrative boards constitutionally cannot be vested with judicial or *quasi* judicial power. Those cases are predicated on the theory that article VI, section 1, of the state Constitution vests the entire judicial power *of the state* in the courts. All of those cases, including the earlier cases of *Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 P. 874], and *Dept. of Public Works* v. *Superior Court,* 197 Cal. 215 [239 P. 1076], upon which the later cases are predicated, expressly recognized that the holdings therein were applicable only to statewide boards and did not apply to local boards. . . . the courts are empowered to interfere with the findings of such boards only where a clear abuse of discretion is alleged and proved. If there is any substantial evidence to support the board's findings the courts are powerless to interfere.'' (See, also, *Naughton* v. *Retirement Board of S. F., supra.)*

Appellant contends that ''The order must be reversed, because the trial court tried the case *de novo,* and made no pretense of reviewing the decision of the Board of Permit Appeals, thus denying any weight or effect to the administrative process.'' It must be admitted that if this were merely a petition for certiorari the superior court would be powerless to take evidence. As previously stated, upon the authority of *Walker* v. *City of San Gabriel, supra,* and other cases, either mandamus or certiorari may be used. In *Ware* v. *Retirement Board,* 65 Cal.App.2d 781 [151 P.2d 549], referring to cases cited herein, the court said (p. 794): ''In the present case, had certiorari been used, the power of the court would have been limited to annulling the order refusing to grant the hearing. No reason exists why, when mandamus is used to review the determinations of local boards invested with quasi judicial power, the scope of the review should be any broader. The above cited cases, in fact, establish that the scope of the review is identical, whichever remedy is used.''

In the present case a stipulation of facts was introduced which reserved the right to either party to offer additional evidence, either oral or documentary. Evidence was introduced by the petitioner union, the petitioner competing company, and on behalf of the chief of police, and the Police Commission which had been made a party upon the insistence of the trial judge. After all evidence had been submitted, and a few days prior to judgment, the Board of Permit Appeals was made a party in the superior court, a return and answer filed and the record before the Board of Permit Appeals made a part of the record before the superior court.

The case was tried de novo prior to the introduction of the Board of Permit Appeals record. The trial judge drew his own conclusion from the evidence and decided accordingly. The superior court not only admitted evidence additional to that presented to the Board of Permit Appeals, but did not limit its findings to the record before the board. The superior court found that the chauffeurs' union had entered into a wage contract: "That separate and apart from said contract" the Yellow Cab Company had agreed to pay the members of the union a certain percentage of its weekly receipts taken in by such members in excess of a specified amount, and later agreed to pay a bonus per day for each six-day week in which the driver's receipts exceeded a specified amount. Evidence before the superior court shows, and the court so found, that the drivers received a substantial part of their income from tips from passengers. The point that we are interested in is the fact that the evidence referred to was produced for the first time before the superior court, and was not introduced before the Board of Permit Appeals, or at least our attention has not been called to any place in the transcript of the record before the board where it may be found, and an independent search on our part has failed to find any such evidence. The above is merely illustrative of the fact that evidence other than that contained in the board's record was introduced in the superior court. There are other instances that could be mentioned but in the interest of brevity they will not be here set out.

▮▮▮▮ The Legislature by general law or by special charter provision may vest judicial power in commissions and boards established in any incorporated city or city and county. "The distinction between the powers of state-wide administrative boards and federal administrative boards is also exist-

ent between boards with state-wide authority in this state and local bodies created by the legislature. By article VI, section 1, of the state Constitution, the judicial power of the state is vested in the enumerated courts, municipal courts as may be established, and 'such inferior courts as the legislature may establish in any incorporated city or town, township, county or city and county.' This latter provision is similar to the provision in the federal Constitution.'' *(Laisne* v. *California St. Bd. of Optometry,* 19 Cal.2d 831, 847 [123 P.2d 457]. (See, also, *California Const.,* art. XI, § 8½, subd. 3; *Irvine* v. *Citrus Pest Dist.,* 62 Cal.App.2d 378 [144 P.2d 857]; *Nider* v. *City Commission,* 36 Cal.App.2d 14 [97 P.2d 293]; *Shewbridge* v. *Police Commission,* 64 Cal.App.2d 787 [149 P.2d 429].) There is a clear distinction between state-wide agencies to which such power has not been extended, and local boards which have been specifically directed to assume functions which in their nature are judicial.

In a proceeding in certiorari or mandamus the superior court is not permitted to accept evidence in addition to the record of a local administrative board possessing judicial or quasi judicial power. The court may not pass upon the truth or falsity of the facts. If there be any substantial evidence the order of such local tribunal must be sustained. In *Lindell Co.* v. *Board of Permit Appeals, supra,* at p. 315, it was held: ''It is the general rule that the writ of mandamus may not be employed to compel a public administrative agency possessing discretionary power to act in a particular manner. The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency. (16 Cal. Jur. 809, § 28; and cases there cited; 34 Am. Jur. 856, § 68, with supporting authority.)'' In *Shewbridge* v. *Police Commission, supra,* the court said (p. 793): ''If it did confer jurisdiction, that jurisdiction in the abstract was power to determine incorrectly as well as correctly.'' (See, also, *Maxwell* v. *Civil Service Commission,* 169 Cal. 336 [146 P.2d 869].) In *Hogan* v. *Retirement Board, etc.,* 13 Cal.App.2d 676 [57 P.2d 520] the appellate court condemned the effort to substitute the court for a fact finding board. (See, also, *Dierssen* v. *Civil Service Commission, supra; Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176 [110 P.2d 453]; *Vaughn* v. *Board of Police Com'rs.,* 59 Cal.App.2d 771 [140 P.2d 130]; *Brant* v. *Retirement Board of S. F.,* 57 Cal.App.2d

721 [135 P.2d 396].) In *Willer* v. *Quinn,* 4 Cal.App.2d 663 [41 P.2d 572], it was held that a permit issued to a pawn-broker could be revoked by the chief of police (charter, § 35); that the pawnbroker had the right to appeal (charter, § 39) to the Board of Permit Appeals, and that in the application for a writ it was necessary to prove that the board lacked jurisdiction or the pawnbroker could not prevail.

In the present case it is not contended that any pertinent provision of the charter or ordinance was unconstitutional, unreasonable or unfair in any respect to any of the interested parties. We are not permitted to substitute our opinion or to disagree with the implied finding of the Board of Permit Appeals if there is substantial evidence to sustain the conclusion reached. The trial court did not find that the board was without evidence to uphold its conclusion. Consideration of the entire record before that board does not convince us that the board acted in abuse of discretion, in excess of jurisdiction, arbitrarily, capriciously or against law.

As already pointed out on this certiorari-mandamus proceeding the superior court tried the matter de novo, and only at the end of the trial introduced the record of the proceedings before the board. As also already pointed out, the trial court's findings were partially based on evidence introduced before it and not introduced before the board. This was clearly error. But the error would not be prejudicial if the conclusion that the license to operate the 125 cabs had in fact and in law been cancelled was the only legal conclusion that either the board or the trial court could lawfully reach. This question was presented to the board. It determined that the license had not been cancelled. That determination was a mixed question of law and fact. As already pointed out, insofar as it was a question of law the board correctly decided it. Insofar as it was a question of fact there was substantial evidence to support the board's finding. Thus the procedure adopted by the trial court of trying the issue de novo was prejudicial to appellant. That court was without power to disturb the finding of the board.

The judgment is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied December 23, 1944, and petitioners and respondents' petitions for a hearing by the Supreme Court were denied January 22, 1945.